*New-Haven,*
July, 1840.

WOOD and another *against* THE HARTFORD FIRE
INSURANCE COMPANY.

Wood
*v.*
The Hartford
Fire Insurance
Company.

In a contract of insurance, any statement or description, on the part of the insured, on the face of the policy, which relates to the risk, is an express warranty.

Such a warranty, being a condition precedent, must be strictly complied with, or the insurance is void.

And it is immaterial for what purpose the warranty was made, or to what cause its non-fulfilment is attributable.

A warranty relates to the risk assumed, when it defines, or, in any respect, limits, that risk.

Where the subject of insurance was described in the policy as " the one undivided half of the paper-mill which the insured own at *W.*, together with the half of the machinery, wheels, gearing," &c., and in a *memorandum* in the conditions annexed to the policy, paper-mills and grist-mills were specified among the articles, which were to be insured at special rates of premium, in contra-distinction to those which were not hazardous, hazardous or extra-hazardous; in *February*, when the insurance was effected, the building in question was a paper-mill, and was used for no other purpose; in *August* following, its use as a paper-mill was discontinued, the rag-cutter and duster were removed, and a pair of mill-stones for grinding grain put in their places, moved by the same gearing and by the power of the same water-wheel, all the other machinery remaining as it was; by the use of the mill-stones, the risk was greater than it would have been, if no use had been made of the premises, but not greater than if the paper-mill only had been in full operation; in *September*, during the continuance of the risk, the premises were destroyed by fire, not caused by the use of the mill-stones; in an action on the policy against the insurers, it was held, 1. that the description of the building as a paper-mill, related to the risk; 2. that consequently, it was a warranty, and if the building was not a paper-mill, at the time of the loss, the warranty was not complied with; 3. that at the time of the loss, it was a paper-mill, ready for use, and consequently, the warranty was duly kept; 4. that the articles specified in the *memorandum*, not being specially provided for in the policy, were excluded from insurance, but the introduction of them would not affect the validity of the policy; and consequently, the insurers were not absolved from their obligations, by reason of any increased hazard resulting from the alterations in the mill.

THIS was an action on a policy of insurance against loss or damage by fire, to the amount of 5000 dollars, on the one undivided half of the paper-mill owned by the plaintiff, in *Westville*, in *New-Haven*, together with one half of the machinery, gearing, &c., from the 11th of *February*, 1837, to the 11th of *February*, 1838.

The policy declared on was executed and delivered to the

*New-Haven,*
*July, 1840.*

*Wood*
*v.*
The Hartford
Fire Insurance
Company.

plaintiffs, by the defendants, in their corporate capacity, as alleged in the declaration. It was in the usual form, and contained the following provisions :

" And it is agreed and declared, to be the true intent and meaning of the parties hereto, that in case the above mentioned building shall, at any time after the making, and during the continuance of this insurance, be appropriated, applied, or used to or for the purpose of carrying on or exercising therein, any trade, business or vocation, denominated *hazardous*, or *extra-hazardous*, in the conditions annexed to this policy, or for the purpose of storing therein any of the articles, goods or merchandize, in the conditions aforesaid denominated *hazardous* or *extra-hazardous*, unless herein otherwise specially provided for, or hereafter agreed, by this company, in writing, and added to, or endorsed upon, this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease, and be of no force or effect."

Certain conditions were also annexed, which, by the terms of the policy, were to be resorted to, in order to explain the rights and obligations of the parties, in all cases not otherwise specially provided for. Among the conditions referred to, were the following :

" 1. Goods are denominated *not hazardous, hazardous*, and *extra-hazardous*. Goods *not hazardous*, are such as are usually kept in dry goods stores, including coffee, cotton in bales, flour, household furniture and linen, indigo, potash, rice, spices, sugars, teas, threshed grain, and other articles, not combustible."

" 2. The following trades and occupations, goods, wares and merchandize, are denominated *hazardous*, *viz*. basket-sellers, coppersmiths, china or earthern or glass ware, or plate glass, in packages, boxes or casks, groceries with any hazardous articles, gun-makers or smiths, hat-finishers, looking-glasses in packages or boxes, milliner's stock, oil, paper in reams, paper hangings, pitch, porter-houses, rags in packages, sail-makers, saltpetre, spirituous liquors, sulphur, tallow, tar, taverns, turpentine, victualling shops, window glass in boxes, and wooden-ware sellers."

" 3. The following trades and occupations, goods, wares and merchandize, are denominated *extra-hazardous*, *viz*. alcohol, apothecaries, aquafortis, basket bleachers or makers, booksellers' stock, brassfounders, brush-makers, cabinet makers' stock, carvers, china or earthern ware, or looking-glasses unpacked, and buildings in which the same are packed or unpacked, chocolate makers, colourmen's stock, comb-makers, confectioners or their stock, druggists, ether, founders, flax, grate makers, hats of chip or grass, or straw bleaching, hemp, hay pressed in bundles, jeweller's stock, lamp manufacturers, lime unslacked, mathematical or musical or optical instrument sellers, or perfumer's stock, mo-

New-Haven,
July; 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.

rocco manufactories, pictures, platers, or plated ware manufactories, prints, printers of newspapers, rag stores, ship chandlers, silversmiths' or stationers' stock, soap makers, spirits of turpentine, stove manufactories, tin or sheet-iron workers, tobacco manufactories, turners, upholstery manufacturers, varnish, watch-makers' stock, tools, &c., window or plate glass unpacked."

" Mem.—Bakers, bark-mills, blind-makers, brewers, brimstone works, bookbinders', blacksmiths', boat builders', cabinet makers', carpenters', joiners', coopers', chair or coach makers' workshops, chemists, cotton-mills, distilleries, dyers, forges, fences, flax-mills, frame makers, fulling-mills, *grist-mills*, hat manufactories, houses building or repairing, ink or ivory-black or lampblack manufactories, livery stables, lumber or mahogany yards, malt-houses, metal and other mills of all kinds, musical instrument makers, oil-makers, oil-boiling houses, pump and block makers' shops, *paper-mills*, piazzas, and privies of wood, printers of books and jobbing, rope-makers or sash-makers, saw or snuff mills, ship builders' stock in the yard, ships or other vessels in port, or their cargoes, or when building or repairing, steam-engines or boats, sugar-refiners, tallow-melters or chandlers, tar-boiling houses, theatres, or other places of public exhibition, timber yards, turpentine manufactories, varnish makers, woollen mills, and generally all manufacturing establishments, and all trades requiring the use of fire heat, not before enumerated, will be insured at special rates of premium."

" 4. Application for insurance must be in writing, and specify the construction and materials of the building to be insured or containing the property to be insured ; by whom occupied ; whether as a private dwelling, or how otherwise ; its situation with respect to contiguous buildings, and their construction and materials ; whether any manufactory is carried on within or about it, and, in case of goods or merchandize, whether or not they are of the description denominated *hazardous* or *extra-hazardous*. And a false description, by the insured, of a building insured, or of its contents ; or in a valued policy, an over-valuation, shall render absolutely void a policy issuing upon such description or valuation. But the office will be responsible for the accuracy of surveys and valuations made by its agents."

At the time of the execution of the policy, and thence until the loss and damage by fire mentioned in the declaration, the plaintiffs were the owners of an undivided moiety of the property insured ; the other moiety being owned by *William Buddington*. The interest of the plaintiffs therein, exceeded the sum of 5000 dollars. On the 9th of *September*, 1837, the paper-mill, together with the wheels, machinery and gearing thereof, was wholly burnt and destroyed by fire. The plaintiffs had no other insurance on the property in question, than the insurance by virtue of this policy. At the time of making it, the premises were correctly described ; and the plaintiffs paid the premium to the defendants. Immediately after the loss, the plaintiffs made the affirmations, and furnished the proofs, declarations and certificates, alleged

*New-Haven,*
*July, 1840.*

Wood
*v.*
The Hartford
Fire Insurance
Company.

in the declaration, and required by the conditions of the policy. At the time of effecting the insurance, the plaintiffs resided in the city of *New-York;* and the premises insured were in the possession and immediate occupancy of *William Buddington,* the owner of the other undivided moiety, to whom the plaintiffs had, in *March,* 1832, given a lease for five years. At the date of the policy, the paper-mill and its machinery were in full operation, being used by *Buddington* in making paper, and so continued, until the 23rd of *May,* 1837, when he discontinued the use of the machinery for the purpose of making paper; and it has not since been used for that purpose. In the month of *August,* 1837, *Buddington,* being so in possession, and having so discontinued the use of the paper-mill, introduced into the establishment, without the knowledge or consent of the plaintiffs, a pair of mill-stones for the grinding of grain; and put them in a place previously occupied by the duster and rag-cutter appertaining to the paper-mill; such duster and rag-cutter being removed for that purpose. These mill-stones were put in operation, by the water-wheel of the paper-mill and other machinery, which had been applied to move the duster and rag-cutter in the manufacture of paper. *Buddington* used the mill thereafter, until it was consumed by fire, for the grinding of grain only, and not for the manufacture of paper; but all the machinery for the manufacture of paper remained in the mill, unremoved, except the duster and rag-cutter, in the place of which the mill-stones were introduced. The fire was not caused by the operation of the mill and mill-stones. After the 26th of *May,* 1837, and at the time of the fire, *Buddington* held, claiming to be tenant of the property, by virtue of his lease from the plaintiffs, and denying the right of the plaintiffs to enter upon or use the premises; and so held against the will and consent of the plaintiffs. The risk, by the use of the mill-stones was made greater than it would have been, if no use had been made of the premises; but the introduction of the grist-mill machinery did not make the risk to the premises greater than if the paper-mill only had been in full operation.

A case embracing these facts, was made, partly by agreement of the parties, and partly by the finding of the jury, and reserved for the advice of this court as to what

judgment should be rendered thereon ; it being admitted, that if, for the plaintiff, it should be for the whole sum insured by the policy, and interest thereon, from the time it was payable.

*New-Haven,*
July, 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.

*Baldwin* and *Kimberly,* for the plaintiffs, contended, That the suspension of the paper-mill operations, and the introduction of the grist-mill machinery into the building, and the use thereof, after the inception of the risk, did not render the policy void, or discharge the under-writers. In support of this proposition, they contended,

1. That the alteration in question was not a violation of any *express condition* of the policy. The substituted use was not within the prohibited classes of risks denominated " hazardous or extra-hazardous," but among " the special rates" only. Nor was it within the 4th condition annexed to the policy ; for its provisions relate to the inception of the risk.

In *Langdon* v. *The New-York Equitable Insurance Co.,* 1 *Hall's Rep.* 235., it is decided, that the true construction is, when an insurance is general on a building, any kind of business, not specially prohibited, may be carried on therein, even by the assured himself. No case has holden the assured to be responsible for alterations not expressly stipulated against, when introduced without his assent or fault. In *Stebbins* v. *The Globe Insurance Co.,* 2 *Hall's Rep.* 647., the court say, it would be unreasonable to *imply* a prohibition, [*i. e.* against the erection of new and contiguous buildings,] when the party has omitted to *express* it. If the assured violates good faith in the creation of the contract, it is void. If subsequently to the contract, he acts with bad faith, fraud or gross negligence, his rights under the contract are not impaired, unless the loss is the result of his own misconduct. Much less is his policy avoided, by such a use by another, as does not increase the hazard beyond that which was assumed by the insurer.

How, then, are the restrictive words, used by the insurers, to be construed ? And how is this case affected by them ? It is said, in the policy, that it is made and accepted in reference to the conditions annexed, which are to be resorted to, in order to explain the rights and obligations of the parties, in all cases not otherwise specially provided for. What are

*New-Haven,*
July, 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.
those conditions annexed? Goods, &c., capable of classifi-
cation, are denominated, 1. not hazardous, 2. hazardous, 3.
extra-hazardous. The goods and trades thus denominated
respectively, are placed in their respective classes, because
they are deemed [*i. e.* all in each class,] equal in hazard, and
are insured at regular rates. A store insured with privilege
to contain extra-hazardous goods, would allow the introduc-
tion of all in the class so denominated; and also, because the
maxim *omne major,* &c., would authorize those merely haz-
ardous. So, too, a store, insured as an apothecary's store,
being in the class denominated extra-hazardous, would,
according to the uniform usage, be construed to authorize
any of the goods or trades so denominated, as well as those
merely denominated hazardous or not hazardous; because
all those are classed and insured at the same, or a less, rate
of premium. But there are certain other trades, buildings,
&c., which, in the memorandum of special rates, are speci-
fied as incapable of being classed together; and therefore,
they are placed in the memorandum of special rates. Now,
if the policy were to say, privileged to be used for extra-
hazardous goods or trades, *that* would not authorize the
assured to introduce a business, which is declared in the
policy, not to fall within any denomination of hazards, insured
at regular rates, but insurable only at a special rate. These
are not denominated in the policy extra-hazardous; if they
were, a privilege to use the building for extra-hazardous pur-
poses would include them all. On the other hand, unless
specially so declared in the policy, the restrictive prohibition,
which suspends the policy on the introduction of goods and
trades, denominated hazardous and extra-hazardous, does
not extend to the trades insurable at special rates. They
are not classed, because some are more hazardous than
others; and therefore, the office insures them at special rates,
not because they are necessarily more hazardous, or even
equally hazardous, with those which are denominated haz-
ardous or extra-hazardous. Most persons would say, that
some, at least, of those insured at special rates, are as little
hazardous as any property whatever, which is not incombus-
tible, *e. g.* fences, privies, timber yards, &c. Some that are
classed with the special rates, and perhaps most of them,
would necessarily cause the introduction of hazardous and

*New-Haven,*
July, 1840.
———
Wood
*v.*
The Hartford
Fire Insurance
Company.

extra-hazardous goods. And as goods so denominated are prohibited, that prohibition would consequently reach those special rate occupations, which could not be carried on without the introduction of hazardous or extra-hazardous goods. But a *grist-mill*, is not a trade of that description; it requires the introduction of no extra-hazardous or hazardous goods; for " threshed grain," is regarded as not hazardous. A paper-mill, on the contrary, does require the introduction of hazardous goods, as rags, paper, &c.

The introduction, then, of the run of stones for grinding grain, not being against any condition contained in, or annexed to, the policy, the insurers are not exempted from liability on that ground.

2. That the alteration in question was not a breach of any *warranty*, express or implied, on the part of the assured.

In the first place, the terms, " the paper-mill," used in the policy, are not a warranty that the building *was then* a paper-mill, but only a representation for the purpose of identifying the building. *Catlin* v. *The Springfield Fire Insurance Company*, 1 *Sum.* 434. *The Columbian Insurance Company* v. *Lawrence*, 2 *Pet.* 25.

Secondly, these words did not constitute a warranty that the building should *continue* to be used as a paper-mill, during the continuance of the policy: it was, at most, a representation of the plaintiff's intention respecting it. It is obvious, that it would not be for the interest of the insurer to have a warranty that the building should continue to be a paper-mill, rather than be used for a *less hazardous* purpose. All that can interest him, is, that his risk should not be *increased*, by converting it into something *more* hazardous than that for which it has been used. To say that this was warranted to continue a paper-mill, and to be used for nothing else, would be to say, that the party insured warrants, not only that the risk shall not be greater than that of a paper-mill, but that it shall always continue to be as great as at the time of effecting the policy. Such a construction would be adding other words to those used by the parties; and that, too, without any possible benefit to either of them.

If there was no express warranty that this building should continue to be a paper-mill, and be used for no other purpose, was there any *implied* warranty to that effect? Where

*New-Haven, July, 1840.*

*Wood v. The Hartford Fire Insurance Company.*

there is no express warranty, the law sometimes *implies*, not from the words used, but from the very fact of the parties effecting an insurance, a warranty that certain facts are true, or certain acts shall be done, relating to the risk. It arises from the mere act of effecting insurance. 1 *Phil. Ins.* 112. It must, of course, imply, that the property was under the *controul* of the assured. The effect of a *misrepresentation* of material facts avoids the policy, because there is an implied agreement, on the part of the assured, to make a fair disclosure of circumstances affecting the risk. But no warranty of the existence and continuance of any fact is ever implied, but on the supposition that from the mere fact of effecting an insurance on the thing in its then condition, the parties are to be presumed, on the one hand, to give, and on the other, to rely on, a warranty that it shall continue precisely in that condition, unless changed without fault of the assured. No warranty is ever implied for the benefit of the insurer, unless the fact warranted is such, that it is apparent to every one, it is for the benefit of the insurer, that it should be so ; and that, in fact, but for such warranty implied, the insurance would not have been made at as low a rate. Of course, all warranties which the law implies against the insured, are such, that if they were not implied, the risk would be *greater* than it is with such implied warranty. Thus, in a marine insurance, a warranty of sea-worthiness is implied from the very fact of obtaining an insurance. But it is not implied, that the ship shall so *continue*, during the voyage. The warranty implied is satisfied, if she was sea-worthy when the risk commenced. *Paddock* v. *The Franklin Insurance Company*, 11 *Pick.* 227. 233. 2 *Phil. Ins.* 126.

Thirdly, the terms of the policy exclude the inference of a warranty. The defendants have, in their conditions or restrictions in the body of the policy, clearly shewn, that they do not consider a change of use warranted against, even when it increases the risk ; for they provide that such use shall have the effect of *suspending* the policy, during its continuance ; whereas, if it was an implied warranty, it would wholly avoid the policy. The enumeration of the trades, &c., for which the building cannot be used without *suspending* the policy, proves, first, that it is not intended that their introduction shall make the policy *void ;* and secondly, that

the introduction of other uses, trades or goods, than those <span>*New-Haven,*</span>
which are denominated hazardous or extra-hazardous, will
not affect the policy, unless it be from some cause distinct
from any warranty or other stipulation contained in the in-
strument.    The insertion of these restrictive words, therefore,
clearly implies, that but for their insertion, the carrying on,
by the occupant, of any other business, in the building in-
sured, if done without any fault on the part of the assured,
would not avoid or impair the effect of the policy.

<span>*New-Haven,*<br>*July, 1840.*</span>

Wood
*v.*
The Hartford
Fire Insurance
Company.

3. That as a *representation*, it is enough that it was made
in good faith, and was, at the time, substantially true.    In the
absence of any warranty, express or implied, the alteration
does not render the policy void, unless it was made with the
knowledge of the assured, and the loss took place in conse-
quence of the alteration ; both which facts are negatived, by
the finding of the jury.    *Stetson* v. *The Massachusetts Mu-
tual  Fire  Insurance  Company*, 4  *Mass. Rep.* 330. 337.
*Merriam* v. *The Middlesex Mutual Fire Insurance Company*,
21 *Pick.* 162.    *Curry* v. *The Commonwealth Insurance Com-
pany*, 10  *Pick.* 535.    *Hollingworth* v. *Brodrick*, 7  *Ad. &
Ellis*, 40.    *Shaw* v. *Robberds* & al., 6 *Ad. & Ellis*, 75.

*Bissell* and *Hungerford*, for the defendants, contended, 1.
That the description of the subject of insurance, embodied,
as it was, in the policy, was a warranty, and not a mere
representation.    A description in the body of the policy
always amounts to a warranty, that the property is as descri-
bed.    *Bean* v. *Stupart*, *Doug.* 11.    *Pawson* v. *Watson*,
*Cowp.* 785. 790.    In the case last cited, there was a collat-
eral representation, and Lord *Mansfield* says :  " If the par-
ties had considered it as a warranty, they would have had it
inserted in the policy."    *Fowler* & al. v. *The Ætna Insu-
rance Company*, 6 *Cow.* 673.    *De Hahn* v. *Hartley*, 1 *Term
Rep.* 343.    S. C. 2 *Term Rep.* 186.    *Duncan* v. *The Sun
Fire Insurance Company*, 6 *Wend.* 488.    1 *Phil. Ins.* 410.
346. 347.    1 *Marsh. Ins.* 335. 339.    There is no distinction
between a marine and a fire policy, in this respect.    1 *Phil.
Ins.* 410.    *Martin* v. *Fishing Insurance Company*, 20 *Pick.*
389.    And a description in the policy is a warranty.    1
*Phil. Ins.* 347., and the cases there cited.    [The counsel
then proceeded to examine and reply to the cases cited

New-Haven,
July, 1840.

Wood
v.
The Hartford
Fire Insurance
Company.

*e contra,* to shew that the term "paper-mill" was a mere representation.]

2. That a warranty is a condition, and if not complied with, defeats the policy, whether it be material to the risk or not, and whether the non-compliance be with, or without, the act or privity of the assured. In regard to the first part of the proposition, there can be no doubt, either on the ground of principle or authority; and the second is equally clear. The assured makes his own contract; and when he stipulates, that certain things are precedent to his right of recovery, he is bound, and the question of increased risk cannot arise. *Hore* v. *Whitmore, Cowp.* 784. *Pawson* v. *Watson, Cowp.* 785. *Bean* v. *Stupart, Doug.* 11. *Duncan* v. *The Sun Fire Insurance Company,* 6 *Wend.* 488. *Jefferson Insurance Company* v. *Cotheel,* 7 *Wend.* 72. 80. *Fowler* v. *The Ætna Fire Insurance Company,* 6 *Cow.* 673. 1 *Phil. Ins.* 410.

3. That there has been a breach of this warranty; or, in other words, the condition, which the plaintiffs imposed on themselves, has not been complied with. In the first place, it is admitted, that the building, when burned down, was not a paper, but a grist, mill. Secondly, had it been a grist-mill, when the policy was effected, the warranty obviously would not have been kept. Thirdly, it is, however, said, that there was no false representation; that it was then a paper-mill; and that the warranty binds the assured only as to the then condition of the property. But the assured were bound to keep their warranty; and it is not enough to shew it to be true, *when made.* "A warranty in a policy of insurance, is a condition or contingency; and unless that be performed, there is no contract. This rule prevails, as well in the case of a warranty applying to matters *subsequent,* as to matters precedent." 6 *Wend.* 488. A warranty of sea-worthiness refers to the commencement of the risk; but the mere fact that the ship was then sea-worthy, does not satisfy the warranty. She must be kept so. 1 *Phil. Ins.* 225. *Putnam* v. *Ward,* 3 *Mass. Rep.* 481.

But it is said, that there was no breach, unless the building was employed in a business that was either hazardous, or extra-hazardous, within the condition of the policy; that this was the only restraint laid upon the assured, by their con-

tract. Such is not the fair construction of the policy. The conditions, it is admitted, form a part of the contract; but the whole are to be taken together, and the ordinary rules of interpretation are to be applied. Now, it could never have been the intention of the company, that an express warranty could be violated in no other way, than by introducing hazardous or extra-hazardous articles into the building insured.

Again, grist-mills, paper-mills, &c., are insured at special rates of premium. Why was this clause introduced into the policy; and what effect is to be given to it? In regard to these risks, the company reserved to themselves the right to fix their own rates of premium, and to consider them as either hazardous or extra-hazardous. The language held out to the assured is, "If you employ your building, in any of these occupations, you must make a special agreement in regard to the rates." The consequence of the doctrine contended for, is to erase this clause from the policy, or to render it of none effect. May a man, having insurance on his dwelling-house, convert it into a distillery, or sugar refinery, and yet keep his warranty? Is not the identity of the property destroyed? Is the property consumed, the same as the property insured?

4. That admitting there was no warranty, but a representation, still, the plaintiffs have so falsified that representation, as to avoid the policy. Suppose the building had been a grist-mill, when insured, and it had been represented as a paper-mill; would the risk have attached? Does it make any difference, that it was *afterwards* converted into a grist-mill?

. But it is urged, that the plaintiffs are not precluded from a recovery, inasmuch as the acts which are claimed to avoid the policy, were not done *by them*. The acts were done by the tenant of the plaintiffs; and therefore, they are responsible. The lease, upon a fair construction of it, in connexion with the facts in the case, had not expired. But supposing it to be otherwise, and that *Buddington* held over, (they taking no measures to put him out,) the effect is the same. Further, the plaintiffs and *Buddington* were joint-tenants; and therefore, they, and not the defendants, are responsible for his acts.

New-Haven,
July, 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.

New-Haven,
July, 1840.

Wood
v.
The Hartford
Fire Insurance
Company.

SHERMAN, J. It is not necessary to advert to all the points which have been discussed in this case, by the learned counsel. The general rule in regard to what constitutes a warranty, in a contract of insurance, is well settled. Any statement or description, or any undertaking on the part of the insured, on the face of the policy, which relates to the risk, is a warranty. Whether this is declared to be a warranty *totidem verbis,* or is ascertained to be such, by construction, is immaterial. In either case, it is an *express* warranty, and a condition precedent. If a house be insured against fire, and is described in the policy as being " copper roofed," it is as express a warranty, as if the language had been, " *warranted* to be copper roofed ;" and its truth is as essential to the obligation of the policy, in one case as in the other. In either case, it must be strictly observed. There may often be much difficulty in ascertaining from the construction of the policy, whether a fact, quality or circumstance specified, relates to the risk, or is inserted for some other purpose—as to shew the identity of the article insured, &c. This must be settled, before the rule can be applied. But when it is once ascertained, that it relates to the risk, and was inserted in reference to that, it must be strictly observed and kept, or the insurance is void. The word " warranted" dispels all ambiguity, and supersedes the necessity of construction. If a house be insured against fire, and the language of the policy is, " warranted, during the policy, to be covered with thatch," the insurer will be discharged, if, during the insurance, the house should be covered with wood or metal, although his risk is diminished ; for a warranty excludes all argument in regard to its reasonableness, or the probable intent of the parties. " It is quite immaterial," says *Marshall,* [on *Insurance,* 249.] " for what purpose, or with what view, it is made ; or whether the assured had any view at all in making it :—unless he can shew, that it has been literally fulfilled, he can derive no benefit from the policy." And he adds, [*page* 251.] that " it is also immaterial to what cause the non-compliance is attributable ; for if it be not in fact complied with, though, perhaps, for the best of reasons, the policy is void." These positions are in conformity with numerous and high authorities, and with the reason of the rule. Parties may contract as they please. When a

condition precedent is adopted, the court cannot enquire as to its wisdom or folly, but must exact its strict observance. An entry on the margin of the policy, or across the lines, or on a separate paper, expressly referred to in the policy, will be construed a warranty, if it relates to the risk ; that is, if it defines, or, in any respect, limits, the risk assumed. It may, indeed, where the explicit language of a warranty is not adopted, be difficult to ascertain, whether, on a fair construction, the clause was meant to define or limit a risk ; but when this is ascertained, the insured has no right to dispense with it, or substitute in its place another risk, however advantageous to the insurer. No man can be compelled to adopt a better bargain than his own.

It is immaterial whether the non-performance or violation of the warranty, be with, or without, the consent or fault of the insured. Its strict observance is exacted, by law; and no reason or necessity will dispense with it.

The argument of the defendants is, therefore, conclusive, if the policy warrants this building to be and continue a paper-mill, and it was not one, at the time of the loss.

In the policy, this establishment is described as " the one undivided half of the paper-mill, which they [the insured] own at *Westville*, together with the half of the machinery, wheels, gearing, &c.; the other half being owned by *William Buddington*." If this relates to the risk, it is a warranty. That it does, is evident from the *memorandum* in the conditions of the policy, where " paper-mills" are enumerated among those articles which " will be insured at special rates of premium :" that is, a paper-mill is the subject of peculiar risks, and is to be insured upon special stipulations. Therefore, the description of this, in the policy, as a " paper-mill," relates to the risk, and is, consequently, a warranty. It is the only subject of insurance ; and if it was not a paper-mill, at the time of the loss, the warranty was not kept, and the plaintiffs cannot recover, although the change may have diminished the hazard, and been effected without their knowledge, or against their will.

It is contended, that the paper-mill had become converted into a grist-mill. The policy is dated in *February*, 1837. In the *August*, following, the use of the paper-mill was discontinued, and a pair of mill-stones were added, for grinding

*New-Haven,*
July, 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.

New-Haven,
July, 1840.

Wood
v.
The Hartford
Fire Insurance
Company.

grain.   They were located in the place  previously  occupied by the rag-cutter and duster ; and were moved by the same gearing, and  by  the  power  of  the  same  water-wheel.   No other machinery was used for the grindstones.   All remained as it was, except the  rag-cutter and  duster ;—which were dismounted—and all the other machinery might, at any time, have been employed in making paper.   It was, to all intents and purposes, a paper-mill, ready for use.   The character of the establishment was no more altered, than if a grindstone had  been attached, by a  band, to the  water-wheel, and all the other machinery left at rest.   The warranty was duly kept.

It has been  further contended, that the defendants are absolved  from their obligations, by reason  of the increased hazard  resulting from  the use of the  mill-stones.   In most cases of insurance,  circumstances occur, which increase the hazard ;  but whether they impair the policy, must depend on its construction, or on the general principles of the law of insurance.   The  jury  have  found, that by the use of the mill-stones  the risk is greater than it would have been if no use were made of the premises, but not greater than if the paper-mill only was in full  operation ; but that they were not the cause of  the  loss.   Admitting that, as the facts were, the hazard was increased, by the use of  the mill-stones ; yet, to this claim of the defendants, the policy itself furnishes a satisfactory answer.   It provides, that if, without the  written agreement of the company, the building shall be appropriated for  carrying on any trade, business or vocation, or for the storing of any articles, " denominated hazardous or extra-hazardous," in the annexed conditions, the insurance shall be of no effect, so long as the  same  shall be so  appropriated. In  the  conditions annexed, grist-mills are not denominated hazardous or extra-hazardous, but enumerated in  the *memorandum* relating to special rates of  premium.   They were under the consideration of the parties, and advisedly omitted from that class, which should affect the validity of the insurance.   An  effect of the *memorandum* is, to exclude from insurance the articles which it embraces, unless specially provided for in the policy ; but they are  purposely distinguished from those which affect its validity.

It is admitted, that the loss has happened, by the risk insured against ; and that all the preliminary steps, to entitle

the defendants to the benefit of the policy, have been taken. The property insured has not been changed; the warranty has been kept; and the obligations of the defendants have not been impaired, by any increase of hazard, resulting from the alterations in the mill.

We advise that judgment be entered for the plaintiffs.

In this opinion the other Judges concurred, except WILLIAMS, Ch. J., who gave no opinion, being nearly related to one of the stockholders in *The Hartford Fire Insurance Company*.

*New-Haven,*
July, 1840.

Wood
*v.*
The Hartford
Fire Insurance
Company.

*Judgment for plaintiffs.*