GEORGE W. DEWEES v. THE MANHATTAN INSURANCE COMPANY.

1. In case of a stipulation in a policy of insurance, that in the event of the building insured being used for certain specified hazardous purposes, the policy shall, for the time being, be suspended; and it being shown that such stipulation was being violated at the time of the fire—*held*, that it was no defence that it appeared that the agent of the company who procured the policy was cognizant of such use at the time the policy was taken out.

2. The written agreement cannot be controlled by parol evidence to the effect that a different understanding existed.

3. The doctrine of estoppel, resting on parol proof, is not applicable, so as to vary the legal force of written instruments.

This cause was before the court at a former stage of it, on a motion to strike out pleas. (See 5 *Vroom* 244.) This motion having been disposed of, issue was joined between the parties and taken down to the Hunterdon Circuit for trial.

The action was *assumpsit* for an insurance. The description in the policy of the insurance and of the property, was as follows:

"To the amount of $2,875, *viz.* : $750 on his undivided interest in the frame building occupied by the assured for country store, situate, &c.; $2,000 on his stock of merchandise, consisting of the usual variety of a country store, contained therein; and $75 on his store furniture and fixtures contained therein."

The following stipulation was contained in the policy, *viz.* :

"And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned premises shall, at any time during the period for which this policy would otherwise continue in force, be used for the purpose of carrying on therein any trade or vocation, or for storing and keeping therein any articles, goods, or merchandise denominated hazardous or extra hazardous or specially hazardous, in the second class of the classes of hazards annexed to this policy, or shall become vacant or unoccupied, except as hereinafter specially provided for, or hereafter agreed to by this corporation in writing upon this policy, from thenceforth so long as the same shall be so used or shall remain vacant, this policy shall be of no force or effect."

It appeared from the evidence that the agent of the company obtained this policy for the assured, and that at the time of doing so he was fully acquainted with the premises insured, and of the uses to which they were put. At the time the policy was taken out, and from thence to the time of the fire, the building injured was used in part as a stable.

After the plaintiff had rested his case, a verdict for $3,572,-14, being the full amount of the insurance, was taken, subject to the opinion of this court upon the following questions:

"1. Was there any legal proof in the cause to show a loss by

the plaintiff equal to or in excess of the whole amount of the insurance proved—and ought he not to have been non-suited upon his failure to produce, on the trial, the other policies of insurance on the premises and property in question?

" 2. Does not the proof made by the plaintiff touching the storage of rags, and the lighting of the store with kerosene, avoid the policy, by showing a violation of the conditions of the said policy on his part?

" 3. Has not the plaintiff violated the said conditions, and thereby avoided the policy, by his use of the lower part of the store insured as a stable?

" 4. Did not the justice who tried the cause at the Circuit admit illegal evidence, which should have been overruled?

" 5. On the whole case made, was the plaintiff entitled to recover?"

The facts on which the case was rested are embodied in the opinion of the court.

Argued before the CHIEF JUSTICE and Justices DEPUE and VAN SYCKEL.

For plaintiff, *G. A. Allen* and *A. V. Van Fleet.*

For defendants, *E. T. Green.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The contract between these litigants, on the point which I shall discuss, is clear and unambiguous. The defendants agreed to insure a building occupied as a country store, and the stock of goods, consisting of the usual variety of a country store. This, by the plain meaning of the terms employed, is a warranty on the part of the insured that the building was used, at the date of the agreement, for the purpose specified. It was a representation, on the face of the policy, touching the premises in question, and which affected the risk; and such a representation, according to all the authorities, amounts to a warranty.

Formal words are not necessary for the creation of an obligation of this character, and, in fact, it usually arises from words of description, which limit the risk contained in the written contract. For example, in a marine insurance, the words "to sail on such a day," or "in port," or "all well on such a day," are plain warranties demanding a literal fulfillment, and are quite as efficacious as would be a formal clause framed to effect the same purpose. Referring to a fire insurance, the court, in *Wood* v. *The Hartford Fire Ins. Co.*, 13 *Conn.* 533, says any statement or description, on the part of the insured, on the face of the policy, which relates to the risk, is an express warranty, and such a warranty, being a condition precedent, must be strictly complied with, or the insurance is void. The same doctrine is maintained by the Court of Appeals of New York, in the case of *Wall* v. *The East River Mutual Insurance Company*, 3 *Seld.* 370, the policy, in that instance, being declared void, on the ground that the building was described as being "occupied as a storehouse," and it appeared it was used also for another purpose. The cases are numerous and decisive upon the subject—so much so, that it does not appear to me to be necessary to refer to them in detail, as, in my opinion, the character of a representation of this kind is apparent upon its face. It can be intended for no other purpose than to characterize the use of the building at the date of the insurance; for, unless this be done, there can be no restriction on the use of the property by the insured, during the running of the risk. Unless this description has the force thus attributed to it, the premises could have been used for any of the most hazardous purposes. A building described in a policy as a "dwelling-house," could, except for the rule above stated, be converted into a mill, or a factory. I think it is incontestably clear that the description of the use of the premises in this case was meant to define the character of the risk to be assumed by the defendants.

But, besides this, it is plain that the written contract was violated, in a fatal particular, by the assured. By the express terms of one of the stipulations of the insurance, it is declared

that, if the premises should be used "for the purpose of carrying on therein any trade or vocation, or for storing or keeping therein any articles, goods, or merchandise denominated hazardous or extra hazardous or specially hazardous, in the second class of the classes of hazards annexed to this policy, &c., from thenceforth, so long as the same shall be so used, &c., the policy shall be of no force or effect." Among the extra hazardous risks, that of keeping a "private stable" is enumerated, and it was shown on the trial, and was not denied, that, at the date of the policy, and at the time of the fire, a part of the building insured was applied by the plaintiff to this use.

It cannot be denied, then, that if we take into view these conditions of the case alone, the plaintiff's action must fall to the ground. He did an act which, by force of his written agreement, had the effect to suspend, temporarily, his insurance. As this fact, having this destructive effect, could not be disputed, it became necessary, in order to save the plaintiff's action, to avoid the effect of the written contract; and this burden was assumed, on the argument, by the counsel of the plaintiff. The position taken with this view was, that the policy was obtained for the plaintiff by the agent of the defendants, and that he knew that the building in question was, in part, used as a stable.

The plaintiff's claim appears to be a meritorious one, and on this account, and in the hope that there might be found some legal ground on which to support this action, the case was allowed by me, at the circuit, to go to the jury, and the questions of law were reserved for this court. But the consideration which I have since given the matters involved, has excluded the faintest idea that, upon legal principles, this suit can be successfully carried through. In my opinion, that end can be attained only by the sacrifice of legal rules which are settled, and are of the greatest importance. Let us look at the proposition to which we are asked to give our assent.

The contract of these parties, as it has been committed to writing, is, that if the plaintiff shall keep a stable on the

premises insured, for the time being, the policy shall be vacated. But, it is said, the agent of the defendants who procured this contract, was aware that the real contract designed to be made was, that the plaintiff might apply the premises to this use. This knowledge of the agent of the defendants, and which, it is conceded, will bind the defendants, is to have the effect to vary the obligations of the written contract. Upon what principle is this to be done?

There is no pretence of any fraud in the procurement of this policy. The only ground that can be taken is, that the agent, knowing that the premises were to be, in part, used as a stable, should have so described the use in the policy. The assumption is, and must be, that the warranty, in its present form, was a mistake in the agent. But a mistake cannot be corrected, in conformity with our judicial system, in a court of law. No one can doubt that, in a proper case of this kind, an equitable remedy exists. "There cannot, at the present day," says Mr. Justice Story, "be any serious doubt that a court of equity has authority to reform a contract, where there has been an omission of a material stipulation by mistake; and a policy of insurance is just as much within the reach of the principle as any other written contract." *Andrews* v. *Essex F. and M. Insurance Company*, 3 *Mason* 10. It is possible, therefore, that in this case, in equity, the present contract might be reformed, so as to contain a permission for the plaintiff to keep his stable in this building, but I think it has never before been supposed that this end could be reached, in this state, by proof before the jury in a trial at the circuit. The principle would cover a wide field, for, if this mistake can be there corrected, so can every possible mistake. If the plaintiff can modify the stipulation with respect to the restricted use of the premises, on the plea of a mistake in such stipulation, on similar grounds it would be open to the company to modify the policy with respect to the amount insured. I am at a loss to see how, on the adoption of the principle claimed, we are to keep separate the functions of our legal and equitable tribunals.

Nor do I think, if this court should sustain the present action, that it could be practicable to preserve, in any useful form, the great primary rule that written instruments are not to be varied or contradicted by parol evidence. The knowledge of the agent, in the present transaction, is important only as showing what the tacit understanding of the contracting parties was. Suppose, instead of proof of such tacit understanding, the plaintiff had offered to make a stronger case, by showing that the agent expressly agreed that the building might be used not only as a country store, as the policy stated, but also as a stable, and that the restraining stipulation did not apply to the extent expressed. Can any one doubt that, according to the practice and decisions in this state, such proof should have been rejected? A rule of law admitting such evidence would be a repeal of the principle giving a controlling efficacy to written agreements. The memory and understanding of those present at the formation of the contract, would be quite as potent as the written instrument.

I have not found that it is anywhere supposed that this general rule which illegalizes parol evidence, under the conditions in question, has been relaxed with respect to contracts for insurance. Decisions of the utmost authority, both in England and in this country, propound this doctrine as applicable to policies in the clearest terms. Chief Justice Parker, in his opinion in *Higginson* v. *Dall*, 13 *Mass.* 96, says that " policies, though not under seal, have, nevertheless, ever been deemed instruments of a solemn nature, and subject to most of the rules of evidence which govern in the case of specialties. The policy is itself considered to be the contract between the parties, and whatever proposals are made, or conversation had, prior to the subscription, they are to be considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it." *Atherton* v. *Brown*, 14 *Mass.* 152, is, upon this point, of the same complexion, and has close pertinency to the case under consideration with respect to the application of the rule of evidence. The description was of property insured " on board the Spanish brig

New Constitution," and the vessel was captured, and, with her cargo, was condemned as American property, and it was held that the description in the policy amounted to a warranty that the vessel was Spanish, and that it was not competent for the assured to show that the underwriters were informed, at the time of their subscription, that she was, in fact, an American vessel.   The court said that parol evidence of what was within the knowledge of the underwriters was not admissible. The following are cases which establish the same proposition : *Vandervoort* v. *The Columbia Insurance Company*, 2 *Caines' R.* 155 ;   *Weston* v. *Emes*, 1 *Taunt.* 115 ;   *Parks* v. *General Int. Assur. Co.*, 5 *Pick.* 34 ;   *Flinn* v. *Tobin*, 1 *Mood. & Malk.* 367 ;   *Jennings* v. *The Chenango Mut. Ins. Co.*, 2 *Denio* 75 ; *Angell on Fire and Life Ins.*, §§ 20, 21.

There are several reported decisions which I do not think are distinguishable, with respect to legal rules and their application, from the present.   Among these is that of *Jennings* v. *The Chenango County Mutual Insurance Company*, 2 *Denio* 75.   There the property insured was described as a "gristmill," and it was proved that carpenters' work was accustomed to be done in it, with instruments and fixtures which were kept there.   One of the principal questions in the case was, whether it was competent to prove that at the time the application was made for this policy, the agent for the defendants was informed that these fixtures were in use in the mill. This proof was rejected, and the policy held void, the ground of rejection being the general rule of evidence, which places written instruments above the level of parol testimony.   Quite as strong in favor of the same doctrine is the case of *Kennedy* v. *The St. Lawrence County Mutual Insurance Company*, 10 *Barbour* 285.   The application of the insured, which formed a part of the policy, described erroneously the buildings which were within a certain distance of the premises.   Here the same circumstance was relied on as a defence which has been set up in the present case, namely, that the agent of the defendants had full knowledge of the situation of the premises and its neighborhood, and that he drew the application, and

specified in it such buildings as he chose. This defence was overruled, and the defendants had judgment.

With respect to the case of *Plumb* v. *The Cataraugus County Mutual Insurance Company*, 18 *N. Y.* 392, to which we were referred by counsel, my answer is twofold: first, that I cannot assent to the doctrine on which that judgment is founded; and, in the second place, that doctrine, if correct, could have no application to the facts now under consideration.

In the case from New York here referred to, there was, in the application for the policy, a mis-description of the distance of the adjacent buildings from the premises insured, and to this defence the reply was, that the agent of the company had made the measurements, and had obtained the signature of the plaintiff, on the assurance "that the application was all right, and just as it should be." The court decided that this declaration of the agent could not be offered for the purpose of altering or contradicting the written contract, but that it was admissible as an *estoppel in pais.* · Now it is at once obvious that, by force of that view, the agreement in question was enforced, not in the sense of the written terms, but in the sense of the oral evidence, and that the practical result was precisely the same as though the instrument had been reformed in conformity to such evidence at the trial. I think there is no doubt that this application of the doctrine of estoppel to written contracts is an entire novelty. In the long line of innumerable cases which have proceeded and been decided on the ground that parol evidence is not admissible as against a written instrument, no judge or counsel has ever intimated, as it is believed, that the same result could be substantially attained by a resort to this circuity. It is true that, if there be a substantial ground in legal principle for its introduction, the fact that it is new will not debar from its adoption; but I have not been able to perceive the existence of such substantial ground. In my apprehension, the doctrine can be made to appear plausible only by closing the eyes to the reason of the rule which rejects, in the presence of written contracts, evidence by parol. That reason is, that

the common good requires that it shall be conclusively presumed in an action at law, in the absence of deceit, that the parties have committed their real understanding to writing. Hence it necessarily follows that all evidence merely oral is rejected, whose effect is to vary or contradict such expressed understanding. Such rejection arises from the consideration that oral testimony is unreliable in comparison with that which is written. It is idle to say that the estoppel, if permitted to operate, will prevent a fraud or inequitable result; most parol evidence contradictory of a written instrument has the same tendency; but such evidence is rejected not because, if true, it ought not to be received, but because the written instrument is the safer criterion of what was the real intention of the contracting parties. In the case now criticised, the party insured stipulated against the existence of buildings within a definite number of feet from the insured property; by the admission of parol testimony, this stipulation was restricted and limited in its effect. This result, no doubt, was strictly just, if we assume that the parol evidence was true; but, standing opposed to the written evidence, the law presumed the reverse. The alternative is unavoidable—it is a choice between that which is written and that which is unwritten. In the case cited, the effect of the rule adopted by the court was to give a different effect to the written terms from that which they intrinsically possessed—a result induced by the admission of oral evidence. This, I cannot but think, was a palpable alteration of the agreement of the parties. The mistake of the court appears to have been in regarding simply the legal effect of the facts which were proved by parol. Receiving that testimony into the case, a clear estoppel was made out; but the error consisted in the circumstance that such oral evidence was, on rules well settled, inadmissible. The question presented was purely one as to a rule of evidence, but it was treated as a problem relating to the application of general legal principles to an admitted state of facts. The case was not decided by a unanimous court; three

judges dissented, and, in my judgment, that dissent was based on satisfactory grounds.

But it has been already observed that, even if the doctrine of this adjudication should be received by this court, such result could have no effect on our decision of the present case. The reason is, that the facts now before us do not present the elements of an estoppel. Such a defence rests on a misconception as to a state of facts, induced by the party against whom it is set up. The person who seeks to take advantage of it must have been misled by the words or conduct of another. ` Now, in the present case, the agent did not make any statement, nor did he do anything which led the plaintiff to alter his condition. The most that can be laid to his charge is, that from carelessness, he omitted properly to describe the use of the premises insured. But this was not a mis-statement of a fact on which the plaintiff acted, because the plaintiff was aware of the circumstance that the building was put to another use. The alleged error in the description is plain on the face of the policy, and the law incontestably charges the defendant with knowledge of the meaning and legal effect of his own written contract. Certainly the entire state of things was as well known to the plaintiff as it was to the agent of the defendants. To found an estoppel on the ignorance of the plaintiff, of the plainly expressed meaning of his own contract, would be absurd.

Being of opinion that the plaintiff's case, on this first point, cannot stand, I have not thought it necessary to look into the other grounds of objection raised on the part of the defence.