[No. 8376. Department One. January 14, 1910.]

PORT BLAKELY MILL COMPANY et al., Respondents, v.
SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY,
Appellant.[1]

INSURANCE—FIRE INSURANCE—POLICY—WARRANTIES — SPRINKLER SYSTEM. A "sprinkler clause" in a fire insurance policy, providing for an automatic sprinkler system and due diligence in maintaining the same in good working order, is a "warranty" where the rate of premium was approximately fifty per cent less than upon the same risk without the sprinkler system, whether the clause was so denominated or not.

SAME—BREACH OF WARRANTY—EVIDENCE—SUFFICIENCY. There is a breach of warranty in an insurance policy for due diligence in maintaining an automatic sprinkler system in a sawmill in good working order, where it was disconnected for nearly three weeks while repairs were being made, and it appears that it was a work of only a few hours to disconnect the system from its old location and move it to its new one.

SAME—BREACH OF WARRANTY—EFFECT. The breach of a warranty in a fire insurance policy to use diligence in maintaining a sprinkler system in good working order, avoids the policy at the time of the

[1]Reported in 106 Pac. 194.

breach, and it is immaterial that the system was in good working order at the time of the fire and that the breach did not contribute to the loss.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered May 5, 1909, upon findings in favor of the plaintiffs, after a trial before the court without a jury, in an action on a fire insurance policy. Reversed.

*H. T. Granger* and *Hughes, McMicken, Dovell & Ramsey*, for appellant.

*Hastings & Stedman, Walter S. Fulton, C. D. Sutton*, and *Titus & Creed*, for respondents.

MORRIS, J.—Action upon a fire insurance policy written by appellant, insuring the property of the mill company against loss by fire in the sum of $10,000, with loss, if any, payable to The Detroit Trust Company. The policy was in the usual form, except that it had attached to it a rider containing a description of the property insured, and various special agreements with reference to the particular risk. On April 22, 1907, a fire occurred, whereby a portion of the insured property was damaged. The appellant contending that the policy had been avoided by the failure of the mill company to observe one of the special agreements, claimed to be a "warranty," denied its liability, and this action was instituted to enforce payment, resulting in findings in favor of respondents, and a judgment in the sum of $6,452.90, with interest from July 15, 1907, from which this appeal was taken.

Three contentions are made by appellant, upon which we are asked to reverse the judgment.

(1) That The Detroit Trust Company may not maintain an action within this state, not having paid an annual license fee nor otherwise complied with the provisions of our laws in regard to foreign corporations doing business within this state.

(2)  That the policy was avoided by the breach of a warranty therein contained.

(3)  That an automatic sprinkler system connected with the mill plant was not in working order at the time of the fire.

Each of these contentions has been considered, but having reached a conclusion upon the second which is determinative of the appeal, we will not discuss the first and third.  The clause in the policy which suggests the second assignment of error is as follows:

"Warranted by the insured that due diligence be used that the automatic sprinkler system shall at all times be maintained in good working order."

The Port Blakely Mill Company was what is known in insurance circles as "a sprinkler risk," and the evidence discloses that the rate of premium upon "a sprinkler risk" was approximately fifty per cent less than upon the same mill without the sprinkler attachment.  So that, by the maintenance of the sprinkler system and the insertion in the policy of the clause above referred to, the mill company obtained this policy upon the payment of $229 premium, which otherwise would have cost it approximately $458.  It is apparent, therefore, that both parties had fully in mind at the time of the issuance of the policy the advantages that would result to each because of the existence of the sprinkler system and the use of due diligence on the part of the insured to maintain it in good working order at all times.  To the insured it meant a saving of $229 on the premium paid; to the insurer it meant a lessening of its risk, ample consideration to each why this particular form of policy should be chosen and the sprinkler clause made a part thereof; and having in mind this situation, it is not unreasonable to assume that the words used in the sprinkler clause were employed by both parties with a full undertaking that it was a statement and assumption of condition and understanding on the part of

the insured relating to the risk and affecting its character and extent.

While, as is said by Shaw, C. J., in *Daniels v. Hudson River Fire Ins. Co.*, 12 Cush. 416, 59 Am. Dec. 192, at page 423, "There is undoubtedly some difficulty in determining by any simple and certain test what propositions in a contract of insurance constitute warranties"; and conceding the leaning of the courts, in order to protect the insured and avoid a forfeiture, is to hold agreements and stipulations in the policy to be representations rather than warranties in all cases where there is any room for construction, it has nevertheless become fixed and settled, except in so far as it may have been changed and modified by statute in some of the states, that all statements regarding the risk contained in or appearing on the face of the policy are warranties. Cooley's Briefs on the Law of Insurance, p. 1133. And such is the rule irrespective of the use of the word "warranty" or "warranted." *Redman v. Hartford Fire Ins. Co.*, 47 Wis. 89, 1 N. W. 393, 32 Am. Rep. 751; *Wood v. Hartford Fire Ins. Co.*, 13 Conn. 533, 35 Am. Dec. 92; *Moulor v. American Life Ins. Co.*, 111 U. S. 335; *Barnard v. Faber*, L. R. 1 Q. B. (1893) 340.

Wood on Fire Insurance, at page 449, says:

"The rule seems to be that such representations in, or a part of the policy, are construed to be warranties when it appears to the court that they have had, in themselves, or in the view of the parties, a tendency to induce the company to enter into the contract on terms more favorable to the insured, than without them. . . . Any statement or description, of any undertaking on the part of the assured, on the face of the policy, which relates to the risk, is a warranty, an express warranty. . . . It is not necessary that it should be stated to be a warranty, or that it should be so by construction. It is enough that it appears upon the face of the policy and relates to the risk."

The case before us would undoubtedly fall within such a rule as Mr. Wood refers to, when it appears that the pre-

mium on this policy upon a "sprinkler risk" and with the sprinkler clause added was reduced approximately fifty per cent of what it would have been otherwise.   This was certainly, in his language, "a tendency to induce the company to enter into the contract on terms more favorable to the insured than without them."   In *Wood v. Hartford Fire Ins. Co., supra,* at page 544, the court says:

"The general rule in regard to what constitutes a warranty, in a contract of insurance, is well settled.   Any statement or description or any undertaking on the part of the insured, on the face of the policy, which relates to the risk, is a warranty.  .  .  .   When it is once ascertained, that it relates to the risk, and was inserted in reference to that, it must be strictly observed, and kept, or the insurance is void."

To our minds the conclusion, both upon reason and authority, is that the clause in question was and is a warranty.

Having reached this conclusion, there is but one other question to be considered, Was there a breach of this warranty? It is undisputed that, from April 1 to April 21, the sprinkler system in what was known in the mill as "No. 3" was disconnected.   The fire occurred on April 22, and there is a sharp conflict in the testimony as to whether or not No. 3 was in operation at the time of the fire.   But, giving due weight to the finding of the court below that it was connected up on April 21, there was a period of nearly three weeks when it is admitted that no protection was afforded by the sprinkler system in No. 3.   The repairs undertaken by the mill during this time were permissable under the policy, but it appears that it was the work of only a few hours to disconnect system No. 3 from its old location and move it to its new.   Such being the fact it was not "due diligence," as called for in the policy, for the mill company to continue the operation of the mill without the protection of sprinkler system No. 3.   It was an undoubted and material increase in the risk, contrary to the terms of the warranty, and was a breach thereof.   The mill company, having broken its contract of

warranty by the failure to use due diligence in maintaining the sprinkler system at all times in good working order, by such failure released the appellant from liability under the policy, and the same thereby was avoided. So that, whether or not the system in No. 3 was in good working order on April 22 is immaterial, since the policy, because of the breach of the warranty, was not then in force or effect. And it was likewise immaterial whether or not this breach contributed to the loss. The policy, being at an end because of its broken warranty, no longer covered any loss or damage to the mill property, and was wholly avoided.

That such is the effect of a broken warranty in a policy of fire insurance there can no longer be any doubt. The principle has been so oft asserted and so frequently announced by both courts and text-writers that it must be regarded as settled. May on Insurance, § 156, thus states the rule:

"Whether the fact stated or the act stipulated for be material to the risk or not, is of no consequence, the contract being that the matter is as represented, or shall be as promised; and unless it prove so, whether from fraud, mistake, negligence, or other cause, nor proceeding from the insurer, or the intervention of the law or the act of God, the insured can have no claim."

Marshall on Insurance, at page 249, states the same rule in this language:

"It is also immaterial to what cause the noncompliance is attributable; for if it be not in fact complied with, though, perhaps for the best of reasons, the policy is void."

In the case of *McKenzie v. Scottish Union & Nat. Ins. Co.*, 112 Cal. 548, 44 Pac. 922, the supreme court of California, quoting the above rules, adds:

"The foregoing quotation is but the enunciation in brief form of a principle laid down by all the writers on the subject of insurance, and enunciated in the leading cases of this country and England."

The supreme court of the United States recognizes the rule

in *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452, and says:

"If it appears that the contract has been terminated by the violation on the part of the assured, of its conditions, then there can be no right of recovery."

We have been furnished with a certified copy of the opinion of Judge Whitson in *Port Blakely Mill Co. v. Royal Ins. Co.*, in the circuit court of the United States for the .western district of Washington, northern division, lately decided but not yet published, in which that learned judge, in passing upon a similar clause in a policy covering this same risk, has reached a like conclusion to the one here announced.

The judgment is reversed, and the cause remanded with instructions to dismiss.

RUDKIN, C. J., GOSE, and CHADWICK, JJ., concur.

FULLERTON, J., dissents.