What constitutes an "accident" or "personal injury" within the meaning of the Worwmen's Compensation Acts, see notes in L. R. A. 1916 A 23; L. R. A. 1917 D 80; L. R. A. 1918 F 867.

---

MITTET et al., Respondents, v. THE HOME INSURANCE COMPANY, Appellant.

(207 N. W. 49.)

(File No. 5668.   Opinion filed February 1, 1926.)

1. **Insurance—Contracts—Policy is Contract Binding on Parties.**
    An insurance policy is a contract, and parties thereto are bound by its terms.

2. **Insurance—Automobile Insurance—Provision Avoiding Policy if Automobile is Used for Livery Purposes Valid.**
    Insurer has a legal right to provide in automobile theft policy that policy shall be void if automobile is used to carry passengers for compensation.

3. **Insurance—Automobile Insurance—Insured's Duty to See that Condition Absolutely Prohibiting Use of Insured Automobile for Livery Purposes is Not Broken.**
    It is duty of insured to see that condition in automobile theft policy, absolutely prohibiting use of automobile for livery purposes, is not broken, and amount of diligence used is immaterial.

4. **Insurance—Warranty—Absolute Exclusion of Certain Use of Insured Property is Promissory Warranty, Breach of Which is not Excused by Lack of Knowledge or Consent.**
    Absolute exclusion of use of insured automobile for livery purposes is a promissory warranty, and a breach thereof is not excused by lack of knowledge or consent by insured.

5. **Insurance—Automobile Insurance—License—Agreement by Insured's Son Not to Use Automobile for Prohibited Purposes Held No Excuse for Breach of Condition.**
    Agreement between owner of automobile and his son that latter was not to use car for livery purposes, which was prohibited by theft policy, indicated understanding that son was to use car, thus making him licensee of owner, and did not excuse breach of condition.

6. **Insurance—Instructions—Instruction that if Owner Was Diligent to Prevent Prohibited Use of Automobile He Could Recover, Though His Son Was so Using it at Time of Loss Held Reversible Error.**

In action on automobile theft policy, prohibiting use of automobile for livery purposes, instruction that if owner had been diligent to prevent such use of it recovery could not be prevented, though his son was so using it at time of loss, was reversible error.

7. **Appeal and Error—Evidence—Trial—Where No Conflict in Evidence, Adjudication Depends on Application of Law to Facts Shown.**

Where there is practically no conflict of evidence as to material facts, adjudication of question depends on the application of the law to those facts.

8. **Insurance—Automobile Insurance—Occasional or Incidental Violations of Promissory Warranty Merely Suspend Liability of Insurer.**

Occasional or incidental violations of strict terms of a promissory warranty in an insurance policy merely suspend liability of insurer, and if no loss occurs during such violation the policy is revived when the violation ceases.

9. **Insurance—Automobile Insurance—Insurer Not Liable on Theft Policy for Loss Occurring During Operation of Automobile in Violation of Policy.**

Where son used father's automobile for livery purposes on one occasion in violation of terms of theft policy, the insurance was temporarily suspended, and for theft occurring during and in consequence of such operation the insurer is not liable.

Appeal from Circuit Court, Jackson County; Hon. John G. Bartine, Judge.

Action by Andrew Mittet and another against the Home Insurance Company. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Reversed and remanded, with instructions to enter judgment for defendant.

*Stephens, McNamee, O'Keeffe & Stephens,* of Pierre, for Appellant.

*Johnson & Johnson,* of Pierre, for Respondents.

(3) To point three of the opinion, Respondent cited. Crowell v. Insurance Co., 169 N. C. 35, 85 S. E. 37; Commercial Union Assurance Co. v. Hill (Tex.), 167 C. W. 1095; 26 C. J. Sec. 249.

(4) To point four, Appellant cited: Wood v. American Auto. Ins. Co., 109 Kan. 801, 202 Pac. 82.

Respondent cited:   Angier v. Western Assurance Co., 10 S. D. 82.

(8)   To point eight, Appellant cited:   10 L. R. A. (N. S.) 736.

MORIARTY, C.   This action was brought by the respondents for the recovery of the value of a car lost by theft, and upon which appellant had issued a policy of automobile theft insurance.

There is practically no dispute as to the facts, which are as follows:

On May 12, 1921, the appellant issued a policy of automobile theft insurance in the sum of $1,500 upon a certain automobile owned by respondent Andrew Mittet.   The respondent George A. Morse, Inc., had an interest in the property insured by reason of a balance due it upon the purchase price.   The insurance policy sued upon contained the following provisions:

"Exclusions:

"(2)   It is a condition of this policy that it shall be null and void:

"(a)   If the automobile described herein shall be used for carrying passengers for compensation, or rented or leased, or operated in any race or speed contest, during the term of this policy.

"This policy is made and accepted subject to the provisions, exclusions, conditions, and warranties set forth or endorsed hereon.

"Conditions:

"(4)   The uses to which the automobile described is and will be put are private use and business calls, excluding commercial delivery."

On August 21, 1921, the automobile covered by the policy was taken by an adult son of Andrew Mittet to be used for conveying a passenger from Andrew Mittet's farm near Stamford, S. D., to Martin, S. D.   The transportation of this passenger was undertaken for hire, although no compensation therefor was ever actually collected.   Andrew Mittet did not know that the car was being taken for this purpose, and had never given consent that his son should use the car for conveying passengers for hire, nor had it been used for that purpose on any previous occasion.   While on the trip from Stamford to Martin, O. A. Mittet, who was

driving, stopped the car and went back a short distance to get some water for the radiator, leaving the passenger seated in the car. About the time the driver was dipping the water the passenger started up the car and drove away. Neither the car not the passenger was seen again by any one interested in the recovery of the car.

Respondents demanded payment of their loss, which demand the appellant refused on the ground that the automobile was being used for carrying a passenger for hire, and that the policy was rendered void because of such use.

The case was tried to a jury. At the close of the plaintiff's case the appellant moved for a directed verdict. This motion was denied and the case submitted to the jury, upon instructions to which appellants noted several exceptions. The jury returned a verdict for the full face of the policy, and judgment was entered thereon. Appellant moved for a new trial, and the motion was denied, and from the judgment and the order denying a new trial this appeal is taken.

While appellant's counsel have presented and argued several assignments of error dealing with the trial court's instructions to the jury, there is no question raised by these assignments that was not raised by appellant's motion for a directed verdict.

The trial court, in denying appellant's motion for a directed verdict, and in giving its instructions to the jury, evidently proceeded upon the theory that, even though the car was being used for a purpose specifically excluded by the terms of the policy, that fact would not prevent recovery if it was so used without the affirmative authorization of the owner. In its instructions the court used these words:

"If you believe then from the evidence that the plaintiffs were diligent in an effort to keep this car from being used for livery purposes for hire under all the circumstances surrounding the entire transaction, then they could not be prevented from recovering, even though a son of one of the plaintiffs might have used it for that purpose at the time of its loss."

This theory of the trial court, and the facts as shown by the record, raise two questions upon which the adjudication in this case must depend:

First.   Would the manner in which the property was being used at the time of its loss be such breach of the terms of the policy as to prevent recovery, had the owner authorized or knowingly permitted such use?

Second.   Would the fact that the owner did not authorize or knowingly permit the car to be used to carry passengers for hire prevent the forfeiture which would otherwise result from such use:

To allow what appears to be the more logical discussion of these questions, we will first consider the question whether lack of the owner's knowledge or consent will prevent the avoidance of liability where the insured property is put to a prohibited use.

[1, 2]   An insurance policy is a contract, and the parties to such contract and the parties to such contract are bound by the terms of their contract, as are the parties to other contracts.   The contract in this case specifically provides that the policy shall be null and void if the automobile shall be used for carrying passengers for compensation.   This was an exclusion which the insurer had a legal right to make.   There is nothing ambiguous in its terms requiring construction by the courts.   It is the use and not the owner's consent to the use that is prohibited.

"In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations not inconsistent with public policy."   14 R. C. L. 929, cited with approval by this court in Miller v. Queen City Ins. Co., 47 S. D. 379, 199 N. W. 455, 35 A. L. R. 263.

[3]   It was the duty of the insured to see that the property was not used in such manner as to cause a breach of the conditions.   The question of how much or how little diligence the owner uses is absolutely immaterialy where the exception is absolute, as in this case, and an actual breach occurs.

[4]  This question has been considered quite frequently in connection with prohibited use of buildings, provisions for avoidance of the policy in case of vacancy and use or storing of certain substances.   Where the exclusion is absolute, as in the instant case, it undoubtedly becomes a promissory warranty, and a breach thereof is not excused by lack of knowledge or lack of consent on

the part of the insured. 19 Cyc. 727; Joyce on Insurance, Sec. 2222; Wood v. American Automobile Ins. Co., 109 Kan. 801, 202 P. 82; Matson v. Farm Buildings Ins. Co., 73 N. Y. 310, 29 Am. Rep. 149; Norwaysz v. Thuringia Ins. Co., 204 Ill. 334, 68 N. E. 551; Cooley's Briefs on Insurance, 1497; Schuermann v. Dwelling House Ins. Co., 161 Ill. 437, 43 N. E. 1093, 52 Am. St. Rep. 377; Insurance Co. v. Gunther, 116 U. S. 113, 6 S. Ct. 306, 29 L. ed. 575; and Leonard v. Northwestern National Ins. Co., 53 Ann. D. C. 343, 290 F. 318.

In the case last above cited the federal court says:

"Whether a warranty has been broken can never depend on the knowledge or ignorance of the party making it touching the facts constituting the breach."

Undoubtedy this is the rule established by a great preponderance of authority.

[5] The respondent Mittet testified that he and his son, O. A. Mittet, had an agreement that the latter was not to use the car for livery purposes. Therefore they had an understanding that O. A. Mittet was to use the car. He was the licensee of the owner. It was the owner, and not the appellant insurance company, that trusted O. A. Mittet to keep within the limits of the agreement and not breach the policy.

[6] The instructions given by the trial court to the effect that if respondent Mittet had been diligent in an effort to prevent the car being used for livery purposes he could not be prevented from recovering, even though his son was using it for that purpose at the time of the loss, was reversible error, and, if this were the only question to be considered, further discussion would be unnecessary. But, as appellant moved for the direction of a verdict, it will be necessary to go further and determine whether the facts justified the denial of that motion.

Having decided that respondent's lack of knowledge of the prohibited use would not excuse the breach of the warranty if in fact a breach occurred, this alone does not decide whether the case should be remanded for a new trial, or remanded with instructions to enter a judgment in accordance with appellant's motion. This necessitates a discussion of the question whether

the record shows, without conflict of evidence that there was an actual breach of the promissory warranty.

[7]   As previously stated, there is practically no conflict of evidence as to material facts; therefore the adjudication of the present question depends upon the application of the law to those facts.

[8]   In dealing with warranties such as that now under consideration the courts have devoted most of their attention to the force of the word use, using or used, as found in policies of insurance.   What treatment of property is sufficient to constitute using it in a manner prohibited by the terms of the policy?

Upon the question there is great divergence of authority. With reference to their position on this question the decisions may be classified under three distinct heads:

. First, those which hold that a single instance of the property being treated contrary to the strict wording of the prohibition is sufficient to constitute a breach of the warranty.

Second, those which hold that single, occasional, or incidental treatment of the property is not sufficient to constitute a breach; that using, keeping, storing, allowing, etc., mean repeated, usual or customary treatment of the property or of the prohibited substance.

Third, those holding that single, occasional, or unusual treatment of the property, or of the prohibited substance, merely suspends the liability while such treatment continues; that if no loss results from the prohibited treatment the insurance is revived by the cessation of the treatment, but, if loss is occasioned by the prohibited treatment, the insurer is not liable for such loss.

This court has never had occasion to pass directly upon this question as it is presented in the instant case.   Perhaps the decision in Farmers' State Bank of Parker v. Tri-State Fire Ins. Co., 41 S. D. 398, 170 N. W. 638, upon casual reading, might be considered to have done so.   It is true that the decision in that case cites with approval authorities holding that:

"What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency."

In that case the provision was that the policy should become void if gasoline " 'be kept, used, or allowed' on the insured prem-

ises." The court held that a single instance of using a mixture of kerosene and gasoline to remove rust from the machinery in the insured building did not avoid the liability of the insurer. But it is evident that the court did not intend to pass upon the effect of the prohibition where the loss is admittedly due to the presence of the prohibited substance, for the court says:

"Whether the presence of the above mixture of gasoline and kerosene was the cause of the fire or not is by no means clear."

This language would be entirely unnecessary had the court intended to hold that the question whether the prohibited substance caused the loss was immaterial. The use of the language indicates that the court recognized the existence of the distinction, and did not wish to be understood as passing upon it.

In commenting upon the contention that, in order to constitute use there must be proof of habitual use, the Supreme Court of New York says:

"We cannot concur in this construction. In the nature of things, if the use of kerosene oil occasioned the loss, the result must have been caused by such use on some particular occasion, and it would be of very little moment whether or not the oil had been habitually used previously without doing injury. It is impossible to conceive how such previous habitual use of the article could have caused the fire. If immediately after taking out the policy, kerosene oil was used, and on the very first occasion it set fire to the barn, according to the construction claimed the loss would have been recoverable, because there must have been a previous habitual harmless use of the oil to entitle the insurance company to the benefit of the stipulated exemption. Such could not have been the intent of the stipulation." Matson v. Farm Buildings Ins. Co., 73 N. Y. 313, 29 Am. Rep. 149.

The logic of this opinion seems to be unanswerable. To hold that a prohibited use must have become usual or habitual to avoid the liability is equivalent to saying that, if an insurer seeks to exempt itself from liability for a loss occasioned by a use so perilous that loss is almost certain to result from the first occasion of such use, the insurer's effort to escape liability must fail, because there is no possibility of the use being repeated frequently enough to make it habitual or usual use. In other words, the

more glaring and certain the peril the more nearly impossible becomes the effort to avoid liability for loss occasioned by it.

To do this is to destroy the right to make a binding contract. The only escape from such fallacious doctrine is either to hold with those courts which construe the words of the contract strictly and say that a single instance of the prohibited act absolutely terminates the contract beyond revival, and those which, seeking to avoid inequitable forfeitures, hold that even a single instance of a prohibited use or condition suspends the liability while the prohibited use or condition continues, but the insurance is revived when such use or condition ceases.

This theory is indicated by the language of Judge McCoy in Edmonds v. Insurance Co., 33 S. D. 55, 144 N. W. 718, 50 L. R. A. (N. S.) 592, where he says:

"If the death of insured had occurred prior to November 21, 1911, by reason of and while he was engaged in the prohibited occupation then there is but little question, but what a recovery on this policy would have been improper. * * * There is absolutely nothing in the circumstances of this case that would, to the least degree, indicate that the death of the insured was in any manner whatsoever due to or connected with the one month's employment in violation of the contract."

Although there is no express declaration of the adoption of the doctrine, these expressions imply the adoption by this court of the doctrine established by the weight of authority, viz., that occasional or incidental violations of the strict terms of a promissory warranty merely suspend the liability of the insurer, and, if no loss occurs during such violation, the policy is revived when the violation ceases. The doctrine necessarily requires release from liability where the loss occurs during the violation and is caused by such violation.

The general rule as to the suspension of liability is thus stated in Elliott on Insurance, Sec. 205.

"The weight of authority seems to support the view that a violation of a condition that works a forfeiture of the policy merely suspends the insurance during the violation, and if the violation is discontinued during the life of the policy, and does not exist at the time of the loss, the policy revives and the company is liable."

See, also, the following authorities: Cottingham v. Maryland Motor Car Ins. Co., 168 N. C. 259, 84 S. E. 274, L. R. A. 1915D, 344, Ann. Cas. 1917B, 1237; Phillips on Insurance, Sec. 975; 1 May on Insurance (3d Ed.), Sec. 101; Sumter Tobacco Warehouse Co. v. Phoenix Assurance Co., 76 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736, 121 Am. St. Rep. 941, 11 Ann. Cas. 780; Silver v. London Assurance Corp., 61 Wash. 593, 112 P. 666; Boyer v. Grand Rapids Fire Lns. Co., 124 Mich. 455, 83 N. W. 124, 83 Am. St. Rep. 338; Joyce on Insurance, Sec. 2202; Port Blakely Mill Co. v. Springfield F. & M. Ins. Co., 56 Wash. 681, 106 P. 194, 28 L. R. A. (N. S.) 593, citing numerous decisions; McClure v. Mutual Fire Ins. Co., 242 Pa. 59, 88 A. 921, 48 L. R. A. (N. S.) 1221, where numerous authorities are cited.

[9] As the car involved in the instant case was being used in violation of the provisions of the policy at the time of the loss, and the loss would not have occurred but for the excepted peril, the insurance was suspended at the time of the loss, and the learned trial court erred in denying the defendant's motion for the direction of a verdict in its favor.

The judgment appealed from is reversed and the case is remanded, with instructions to the trial court to enter judgment for the defendant.

Note.—Reported in 207 N. W. 49. See, Headnote (1), American Key-Numbered Digest, Insurance, Key-No. 124, 32 C. J. Cec. 175; (2) Insurance, Key-No. 329, Burglary and Fire Insurance, 9 C. J. Sec. 7; (3) and (4) Insurance, Key-No. 329, Burglary and Fire Insurance, 9 C. J. Sec. 5; (5) Insurance, Key-No. 329, Burglary and Fire Insurance, 9 C. J. Sec. 8; (6) Insurance, Key-No. 329, Burglary and Fire Insurance, 9 C. J. Sec. 15; (7) Appeal and error, Key-No. 989, 4 C. J. Sec. 2835; (8) Insurance, Key-No. 309, 32 C. J. Sec. 495; (9) Insurance, Key-No. 329, 32 C. J. Sec. 495.

Effect of temporary condition which ceased before loss, under general provision against increase of risk or specific provision against certain conditions, see notes in 10 L. R. A. (N. S.) 736, 28 L. R. A. (N. S.) 593, 32 L. R. A. (N. S.) 240, 48 L. R. A. (N. S.) 1221.