CRAMER, Appellant, v. AMERICAN ALLIANCE
INSURANCE CO., Respondent

(37 N. W.2d 192.)

(File No. 9029.   Opinion filed April 23, 1949.)

**Davenport, Evans & Hurwitz,** of Sioux Falls, for Appellant.

**Roy E. Willy,** of Sioux Falls, for Respondent.

SMITH, P. J.   This action is founded on a policy of insurance.   On this appeal from a judgment for defendant the single question for consideration is whether the loss admittedly suffered by plaintiff is covered by the contract.

The facts are not in dispute.   On July 25, 1947, with the form of defendant's policy before them, defendant offered to insure plaintiff against loss of and damage to his aircraft on any one of four coverages described in the policy as follows: "A. All Risk—(Flight and taxiing participating form) B. All Risk—(Flight and taxiing deductible form) C. All Risk—Ground only excluding taxiing— including fire in flight" and "D. All Risk—Ground only including taxiing and fire in flight" for the following premiums, viz., for coverage A $983.95, for coverage B $983.95, for coverage C $285.01, and for coverage D $316.83.

Other portions of the contract explain and extend its coverage as follows:

"Coverages A and B—All Risk.   Any direct loss of or damage to the aircraft.

"Coverage C—All Risk—Ground only excluding taxiing including fire in flight.   Any direct loss of or damage to the aircraft while not in flight or taxiing, and loss sustained in flight by reason of fire, lightning, explosion and self-ignition except following collision but including resultant collision damage.

"Coverage D—All risk—Ground only including taxiing and fire in flight.   Any direct loss of or damage to the aircraft while not in flight and loss sustained in flight by reason of fire, lightning, explosion and self-ignition except following collision but including resultant collision damage."

A further provision of the policy defines the word "flight" to mean "* * * the period from the time the aircraft moves forward in taking off or in attempting to take off for air transit, while in the air, and until the aircraft completes its landing and landing run after contact with the land or water."

Plaintiff originally elected the "D" type of coverage and received his policy upon payment of a premium of $316.83. Thereafter on August 25, 1947, a change to "C" coverage was endorsed on his policy in words as follows: "In consideration of an return premium of $31.82 the coverage afforded under insuring agreement D. All Risk—Ground only including taxiing and fire in flight of this policy is cancelled and coverage is now extended under insuring agreement C. All Risk—Ground only excluding taxiing—including fire in flight * * *".

On January 30, 1948, as plaintiff was in the act of landing his aircraft and while his landing run was in progress the aircraft collided with a snowbank and broke the propeller and bent both wings. There was no fire or explosion.

Thereafter plaintiff commenced this action. In his complaint he set forth all of the terms of his policy, alleged the facts we have stated and claimed loss and damage in a very substantial sum. Defendant moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted, and such proceedings were had as resulted in a judgment of dismissal on the merits. This appeal has been prosecuted by plaintiff.

The plaintiff on the one hand asserts that the language of the policy reading as follows: "Coverage C—All Risk—Ground only excluding taxiing—including fire in flight. Any direct loss of or damage to the aircraft while not in flight or taxiing, and loss sustained in flight by reason of fire, lightning, explosion and self-ignition except following collision but including resultant collision damage" must receive a construction most favorable to the insured and be held to cover all loss and damage **resulting from a collision** while in flight.

The defendant, on the other hand, asserts that to so read the policy is to rewrite its terms, and that by plain and unequivocal provisions the policy, so far as collision is concerned, insures against loss and damage only as to a collision while in flight which results from a fire, lightning, explosion, or self-ignition. Such was the view of the trial court.

■ If a contract of insurance, looking at all of its provisions, is fairly susceptible of two constructions, one of which is more favorable to the insured than the other, the construction most favorable to the insured should be adopted. Lundeen v. Schumacher, 52 S. D. 149, 216 N. W. 883, Ehrke v. North American Life & Casualty Co., 71 S. D. 376, 24 N. W.2d 640; Thompson v. State Automobile Ins. Ass'n, 70 S. D. 412, 413, 18 N. W.2d 286; Hemmer-Miller Development Co. v. Hudson Ins. Co., 59 S. D. 129, 238 N. W. 342 and Miller v. Queen City Fire Ins. Co., 47 S. D. 379, 199 N. W. 455, 35 A. L. R. 263.

The question which this settled principle of construction of insurance contracts raises is whether the quoted provisions, considered as a whole, are fairly open to two constructions. The principle is not invoked by the mere claim that the language will bear more than a single construction.

That when fairly read these provisions do convey the meaning read from them by the trial court cannot reasonably be denied.

The type of coverage is first described as "Coverage C— All Risk—Ground only excluding taxiing—including fire in flight." Thus the reader is first advised that the flight risk is limited to loss and damage occasioned by fire. It is against this background that he reads the sentence which describes the coverage in detail as follows: "Any direct loss of or damage to the aircraft while not in flight or taxiing, and loss sustained in flight by reason of fire, lightning, explosion and self-ignition except following collision but including resultant collision damage." No difficulty arises in understanding the coverage while not in flight. Neither is there any difficulty in understanding that loss and damage from fire and the kindred causes of lightning, explosion and self-ignition are covered so long as the fire or explosion does not follow a collision. Thus we come to the portion of the sentence which give rise to the controversy, viz., "but including resultant collision damage."

We look at the word "resultant." When employed as an adjective, it is defined by Webster's New International

Dictionary, (2d Ed.), as "resulting or issuing; that is derived or consequent upon something else; having the character of a result or consequence." In the phrase under consideration "resultant" modifies the unit idea expressed by the word "damage" and its adherent "collision." The reader learns that the writer is not dealing with "collision damage" in general but with a resultant or consequential collision damage. Therefore he must look to the rest of the sentence to ascertain the source of the collision damage. It thus becomes patent that the sentence refers to collision damage consequent upon "fire, lightning, explosion and self-ignition."

In argument, we are told that if such was the intended meaning, it could have been more clearly expressed in a different form of words, and examples are given. We are also told that meaning was obscured because the phrase we are considering was separated from the words "fire, lightning, explosion and self-ignition" by words "except following collision." We are not inclined to disagree but deem the argument beside the point. Our inquiry is whether the provisions are fairly open to a second meaning. No matter how poorly a sentence may be formed, if, when read in context and as a whole, it conveys a single meaning, a court's only function is to declare that meaning.

As we have indicated, plaintiff reads the sentence as though the last portion thereof were written "and loss sustained in flight by reason of fire, lightning, explosion and self-ignition except following collision but including **damage resulting from collision.**" And seeks to justify such an interpretation by the assertion that "Nobody could reasonably question that, standing alone, 'resultant collision damage' would mean 'damage resulting from collision.'" Whether this assertion will bear analysis we need not determine. The words "resultant collision damage" do not stand alone. They must be read in context in the light of common knowledge that damage from a crash is frequently the consequence of a fire in flight. We cannot fail to notice that "collision damage" is not set up as an "additional" risk. It is referred to as included damage. Then as we have

pointed out, it is made plain by the use of the word "resultant" that not all "collision damage" in flight is covered, but a particular kind of "collision damage", viz., a consequential damage resulting from something else, namely, the "fire" risk described in the quoted subtitle and the explanatory sentence which follows it. We are of the opinion that these provisions are not fairly open to two constructions. To cause the coverage to include "all damage resulting from a collision in flight" requires us to rewrite the contract and that we are not at liberty to do.

The judgment of the trial court is affirmed.

All the judges concur.