SUNSHINE MUTUAL INSURANCE COMPANY, Appellant,
v. ADDY et al., Respondents

(53 N. W.2d 539)

(File No. 9275. Opinion filed May 19, 1952)
Rehearing denied June 16, 1952

**C. C. Caldwell, Howard B. Crandall,** Sioux Falls, for Plaintiff and Appellant.

**Blaine Simons, T. R. Johnson,** Sioux Falls, for Defendant and Respondent.

**Bielski, Elliott & Lewis,** Sioux Falls, for Petitioner in Intervention and Respondent.

LEEDOM, J.   This is the third decision handed down by this court in this litigation arising from a serious collision of motor vehicles that occurred in Minnehaha County July 7, 1948.   The previous opinions are reported in 72 S. D. 634, 38 N.W.2d 406, 10 A.L.R.2d 670, and in   73 S.D. 595, 47 N. W.2d 285, to which reference is made for the facts and prior developments.

For the reasons stated in the opinion appearing at 47 N.W.2d 285, the court with two members dissenting reached a conclusion on divergent grounds that there was liability under the policy. This was contrary to the decision on the first appeal. Now after careful consideration of the terms and conditions of the policy not previously construed and on which diligent counsel have focused new emphasis in this appeal, and because of the conclusion we are compelled to reach on the policy provision hereafter discussed, we revert to the result reached in our first decision. We hold there is no liability under the policy and necessarily reverse the trial court.

Under the heading "Exclusions" the policy contains this provision: "This policy does not apply: (a) under any of the coverages, while the automobile is used as a public or livery conveyance, or for carrying persons for a charge, unless such use is specifically declared and described in this policy and permium charged therefor".

This provision in the policy was not necessary to and formed no part of the decision in the first appeal which held that there was no liability inasmuch as the insured truck at the time of the accident was admittedly being used as a class B motor carrier for hire under a permit from the Public Utilities Commission and therefore not in conformity with the "farm use" designated in the policy. Neither did the quoted provision form a part of the decision on the second appeal; and so until now this provision has not been construed.

If at the time of the accident the truck was being used in violation of exclusion (a) there would be no liability to assured even though such use had been made only occasionally or even if it was and had been the only use made of the truck in such violation. Mittet v. Home Ins. Co., 49 S. D. 319, 207 N.W. 49.

The question then that is decisive of this appeal and that arises in the interpretation of the stated policy provision is whether or not the use of the truck in hauling livestock for hire as a class B motor carrier under a P.U.C. permit as stated, constitutes use as a "public conveyance". We hold that it does.

■■ The respondents contend that the term "public or livery conveyance" appearing in the clause, refers to a conveyance of passengers only and cite numerous cases containing language that taken literally supports their contention. On careful analysis, however, as hereafter appears, the cases are not authority for respondents' position.

It is elementary that all conditions and provisions of an insurance policy are to be construed together for the purpose of **giving effect to each clause** according to the language the parties used, and in the absence of ambiguity, to give to the words used their plain, ordinary and popular meaning. We are therefore clearly confronted with the duty of giving some meaning to the words "public conveyance" used in this clause of the policy. For us to give to the term a narrow or special meaning as urged by respondents in limiting the reference to passenger transportation, would be wholly unrealistic in dealing with a policy written on a truck obviously neither intended nor useful for transportation of passengers. Such interpretation would thus be in violation of a primary and elementary rule of construction.

■ Furthermore the plain and ordinary meaning of the word "conveyance" is carrying or transporting or a means or way of conveying. It is only in the unabridged editions of the dictionaries that a special definition appears that in any manner supports the respondents' position; but we are not justified in resorting to a special or limited definition unless such limited meaning is clearly indicated as for example might be the case in the use of the phrase in an accident policy involving increased or double indemnity for injury occurring in or on a public conveyance. We can see that in such a situation which would quite necessarily involve only passenger transportation the phrase might be construed to apply only to licensed passenger vehicles.

We however rely on the judicial definition given to the term in all of the cases cited to us and discovered in our own research that actually deal with our precise question.

In Sanchez v. Contract Trucking Co., 45 N. M. 506, 117 P.2d 815, the court was required to interpret this language: "Whilst running, conducting or managing any locomotive,

car, or train of cars, or of any driver of any stage coach or other public conveyance." It was contended that "public conveyance" having been added to the original statutory clause following the word "stagecoach" should be construed under the "ejusdem generis" doctrine to have a reference only to passenger carrying vehicles inasmuch as a stagecoach carried principally passengers. The court rejected such contention and held the term applied equally to a freight conveyance or truck used as a public carrier. The court cited and relied on Cain v. Bowlby, 10 Cir., 114 F.2d 519, writ of certiorari denied 311 U.S. 710, 61 S.Ct. 319, 85 L.Ed. 462, in which the same language was construed in the same manner. See also Drakesmith v. Ryan, Mo.App., 57 S.W.2d 727; Romero v. Atchison, T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37, and cases cited, where the narrow definition of "public conveyance" here contended for is rejected and the term is applied to freight haulers on the theory the term means common carriers.

■ We of course recognize the rule requiring, in case of ambiguous language, an interpretation most favorable to the policy-holder. Never should it be applied however to permit or require a forced and unnatural construction simply to support a liability not otherwise present. Such rule applies only when an ambiguity exists and the meaning of language is not clear. A mere claim of ambiguity does not invoke this principle. Cramer v. American Alliance Ins. Co., 72 S. D. 509, 512, 37 N.W.2d 192, 9 A.L.R.2d 577.

Mr. Chief Justice Hughes used apt language in dealing with this rule of construction in Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693, 700:

"As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policy-holders, is it equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based,

should be maintained unimpaired by loose and ill-considered interpretations."

The question that has been raised as to the meaning of "public conveyance" really relates to the word "conveyance" and not to the word "public". That the truck as a conveyance used under the class B permit was "public" is well settled by SDC 44.0406 which requires that it be available to serve all memmbers of the public without discrimination. Respondent Addy recognized this in his testimony that he was bound by the law to charge the regular rate for the haul he was making at the time of the accident. The fallacy of respondents' position has to do with this matter of which word, i.e. "conveyance" or "public", is in question. Without exception all the cases cited by respondents on this phase of the case deal not with a type of "conveyance", nor with the question of a conveyance of freight as against a conveyance of passengers but rather with a casual or incidental conveyance of passengers as against an habitual or authorized and licensed conveyance of passengers. As a result the language used in the cases defining the composite term "public conveyance" quite naturally involves only passenger transportation. A reference to freight transportation in these cases would have been wholly extraneous; and so language that is literally suited to respondents' contention is actually quite foreign to our problem.

Typical of such cases is Stanley v. American Motorists Ins. Co., Md., 73 A.2d 1, 2, first cited on this point in respondents' brief.. An exclusion of the policy involved provided: "This policy does not apply: (a) while the automobile is used as a public or livery conveyance". The insured truck was used to transport members of a club to a picnic for an aggregate charge of $18 which was paid to the driver of the truck, an employee of the insured. Neither the driver nor the assured was engaged in the business of transporting passengers for hire in the truck or any other vehicle and this use was an isolated case. In holding that this single use did not make the truck a "public conveyance" the court quoted with approval this definition on which respondents rely:

"The term 'public conveyance' means a vehicle used in-

discriminately in conveying the public, and not limited to certain persons and particular occasions or governed by special terms. The words 'public conveyance' imply the holding out of the vehicle to the general public for carrying passengers for hire."

The same definition appears in Allor v. Dubay, 317 Mich. 281, 26 N.W.2d 772, 774, and is taken from the syllabus by the court in Pimper v. National American Fire Ins. Co., 139 Neb. 109, 296 N.W. 465, where it is attributed to the Kansas court in Elliott v. Behner, 150 Kan. 876, 96 P.2d 852, all cases relied on by respondents. The identical definition appears in numerous other cases, some cited by respondents and all of the same nature, that is dealing with varying arrangements for transportation of persons. In the Allor case cited the plaintiff sought to recover under a policy with a clause similar to the one in the case at bar for an injury sustained in an automobile while being carried on a "share-the-ride" basis with fellow employees. In the Pimper case above the insured sought to recover for an upset under a policy with a similar exclusion clause where the accident occurred while he was giving friends an accommodation ride for a contribution toward expenses; and in the Elliott case above the plaintiff was injured while riding in a county truck along with other county employees from the place of their work, on an accommodation basis. Thus it may be seen that the facts in all these cases involved only passenger transportation and in none of them is there any question as to whether or not a vehicle conveying freight as a licensed motor carrier would be included in the term "public conveyance".

We have found no case and have been referred to none that construes this exclusion clause with reference to the facts here present. While the cases are not numerous defining the term "public conveyance" with reference to freight vehicles where the term appears in language other than such an exclusion clause, as in the cases hereinbefore cited, we know of none that does not hold a common carrier of freight to be a public conveyance. Neither do we know of any other authority that supports respondents' position.

We think it is significant that in SDC 44.0422, as amend-

ed by Laws 1943, c. 160, defining motor carriers the word "conveyance" is used interchangeably with "transportation" in direct reference to the carriage of both persons and property.

In our opinion the truck was being used as a public conveyance at the time of the accident under the quoted exclusion and so there is no liability under the policy arising out of such accident. The judgment of the trial court is reversed and the case is remanded with instructions to the circuit court to enter judgment in favor of appellant declaring that the policy provided no coverage to the respondent Addy at the time of the accident involved herein and that appellant therefore is not liable under said policy on any judgment or other claim rendered against the insured on account of said accident.

RUDOLPH and SMITH, JJ., concur.

SICKEL, P. J., and ROBERTS, J., dissent.

RUDOLPH, J. (concurring). It is my opinion that this dispute was finally determined by the opinion appearing in 72 S. D. 634, 38 N.W.2d 406, 10 A.L.R.2d 670. However, in view of the fact that the case is with us again, I note my concurrence in the construction of the policy provision relied upon by Judge LEEDOM.