Larry E. PROKOP and Dianna S. Prokop, Plaintiffs and Appellants,

v.

NORTH STAR MUTUAL INSURANCE COMPANY, Defendant and Appellee.

No. 16824–a–GWW.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1990.

Decided June 20, 1990.

N. Dean Nasser, Jr., Caitlin F. Collier, Nasser Law Offices, P.C., Sioux Falls, for plaintiffs and appellants.

Michael J. Schaffer, Susan Jansa Brunick, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

WUEST, Chief Justice.

Larry and Dianna Prokop (Prokops) appeal from a summary judgment order which limited their recovery under a homeowners' policy to $2750.00. We affirm.

In July of 1986, North Star Mutual Insurance Company (North Star) issued a

homeowners' insurance policy to the Prokops. The policy covered the Prokops' house located at 4021 Palisade Lane, Sioux Falls, South Dakota. This policy provided, in pertinent part, as follows:

*Coverage C—Personal Property*

1. *While on the Insured Premises—* This policy covers personal property owned by or in the care of an insured. At your option, the personal property of guests and domestic employees is covered while on the portion of the insured premises occupied exclusively by an insured.

2. *While Away from the Insured Premises—*You may apply up to 10 percent of the Coverage C limit of liability or $2500 (whichever is more) to cover personal property owned or used by an insured, while away from the insured premises, anywhere in the world. This does not increase the Coverage C limit of liability.

In a separate section of this policy entitled "Incidental Property Coverage," the following is set forth:

C. *Change of Location—*When you move to another location where you intend to permanently reside:

1) the Coverage C limit of liability applies pro rata at each location for 30 days from the date you begin to move but not extending past the expiration date of the policy;

2) property in transit is covered against direct loss from perils insured against for an amount up to 10 percent of the Coverage C limit of liability or $2500, whichever is more.

When you move, the Change of Location coverage applies in place of your coverage for property While Away from the Insured Premises.

Shortly after the Prokops purchased this policy, Dianna Prokop was offered and accepted employment in Sacramento, California. The Prokops then made arrangements to have their residence in Sioux Falls sold. On August 19, 1986, the Prokops removed their personal property from their Sioux Falls residence, placed it in a U–Haul trailer and departed for Sacramento, California.

Prior to their departure, Dianna's new employer had arranged for the Prokops to stay at the Days Inn Motel upon their arrival in Sacramento. The Prokops had no other living arrangements at that time.

On August 22, 1986, the Prokops arrived at the Days Inn Motel in Sacramento and parked their U–Haul trailer in the Days Inn parking lot. They removed some plants, clothing, personal items and children's toys from the U–Haul. No furniture was removed from the trailer. Two days later, on August 24, 1986, the U–Haul trailer and its entire contents were stolen from the Days Inn parking lot. Shortly thereafter, the Prokops filed a claim with North Star for loss of personal property. The limit of North Star's liability for personal property loss under the homeowners' policy was $27,500. As the value of the stolen property well exceeded this limit of liability, the Prokops claimed that they were entitled to that full amount. North Star refused to pay the full amount of its limit of liability, but instead tendered ten percent of that amount to the Prokops and claimed that by such payment it had fulfilled its obligations under the homeowners' policy.

Having failed to reach an agreement with North Star, the Prokops instituted this action seeking a judgment against North Star in the amount of $27,500. During this action, both parties submitted motions for summary judgment. The trial court granted North Star's motion for summary judgment and subsequently entered an order denying the Prokops' claim for the $27,500. In this order, the trial court reasoned that according to the "While Away From the Insured Premises" clause set forth in the policy, the Prokops were only entitled to recover 10 percent of North Star's limit of liability for personal property loss. The Prokops now appeal from this order.

■ On appeal, the Prokops argue that the "Change of Location" provision set forth in the policy is controlling under these circumstances, and that according to this provision they are clearly entitled to recover the full amount of North Star's limit of liability for personal property loss. Therefore, the Prokops contend that the

trial court erred in denying their claim against North Star for this full amount. Having reviewed the language of the policy in question, we are unable to agree with this argument set forth by the Prokops.

Under the facts of the present case, the "Change of Location" provision is clearly not applicable. This provision applies when the insureds move "to another location where [they] intend to permanently reside." Here, the Prokops did not move to another location where they intended to permanently reside. The Prokops argue that the term "location" is ambiguous in that it could refer to a specific residence such as a house or an apartment; or it could refer to a city or metropolitan area. As this term is ambiguous, the Prokops argue that it must be construed in favor of the insured. Therefore, the Prokops request this Court to construe the term "location" to mean city or metropolitan area. By this broad definition, the "Change of Location" provision would be applicable in this case because the Prokops did move from one city to another city where they did intend to permanently reside. Based upon our review of the policy language, we hold the term "location" is not ambiguous, therefore, we reject the Prokops' argument as to this issue.

■ Initially, we recognize that "where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted." *Black Hills Kennel Club Inc. v. Fireman's Fund Indemnity Co.*, 77 S.D. 503, 507, 94 N.W.2d 90, 92 (1959). We further note, however, that the provisions of an insurance contract "are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *Cheney v. Metropolitan Life Ins. Co.*, 370 N.W.2d 569, 573 (S.D. 1985); *See also, Vern Eide Buick, Inc., v. United States Fidelity & Guaranty Co.*, 273 N.W.2d 116 (S.D.1978); *Cramer v. American Alliance Ins. Co.*, 72 S.D. 509, 37 N.W.2d 192 (1949). Moreover, insur-

ance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity. *Helmbolt v. LeMars Mutual Ins. Co., Inc.*, 404 N.W.2d 55, 59 (S.D.1987); *See also*, Appleman, Insurance Law and Practice, Vol. 13, § 7386, p. 138–140 (1976).

■ By claiming that the term "location," in the context of this policy, refers to a city or metropolitan area such as Sacramento, California, rather than a specific residence such as that of a house or apartment, the Prokops are resorting to a subtle and forced construction of this policy for the purpose of extending coverage. Based upon the language used in the policy, it is clear that the term "location" refers to a specific residence such as that of a house, apartment or mobile home. This is plainly evident in the "definitions" portion of this policy in which the term "insured premises" is defined. Under this definition, the following is set forth:

a. *Described Location:*

1) If you own the one to four family *house* described in the Declarations, the insured premises mean that house, related private structures, and grounds *at that LOCATION.*

2) If you own the *townhouse* or *row house* described in the Declarations, the insured Premises mean that townhouse or row house, related private structures and grounds used or occupied exclusively by your household for residential purposes *at that LOCATION.*

3) If you own the one or two family *mobile home* described in the Declarations, the insured premises mean that mobile home, related private structures and grounds *at that LOCATION.*

4) If you reside in the *condominium unit, cooperative, apartment* or *rented premises* described in the Declarations, the insured premises mean the parts *of the described location* which are used or occupied exclusively by your household for residential purposes. (Emphasis added).

From this definition, it is clear that the term "location," in the context of this policy, refers *not* to a city or metropolitan

area, but rather to a specific residence such as that of a house, an apartment or mobile home. This is the only reasonable construction that can be given to the term "location" under these circumstances. Hence, we conclude the term "location" is not ambiguous.

The Prokops contend that even if the term "location" refers to a specific residence such as that of a house or apartment, the "Change of Location" provision still applies because they did move to a specific residence when they rented a room at the Days Inn Motel. We find no merit in this argument. The "Change of Location" provision applies when the insureds move to another location "where [they] intend to *permanently* reside." From the Prokops' own testimony, it is clear that they did not intend to permanently reside at the Days Inn Motel.[1] Since the Prokops did not intend to permanently reside at the Days Inn Motel, they cannot claim that the "Change of Location" provision is applicable under these circumstances.

■ The dispositive clause in the homeowners' policy which establishes the extent of North Star's liability under these circumstances is the "While Away from the Insured Premises" clause. This clause states that the Prokops may apply 10 percent of the North Star's limit of liability for personal property loss to cover personal prop-

erty owned or used by the Prokops while away from the insured premises. Here, the Prokops' personal property was clearly being used by them while away from their insured premises in Sioux Falls, South Dakota. Therefore, the Prokops may only apply up to 10 percent of North Star's total limit of liability for loss of their personal property.

Our conclusion that the "While Away from the Insured Premises" clause is controlling in this case finds support in *Olguin v. Allstate Insurance Co.*, 71 Wis.2d 160, 237 N.W.2d 694 (1976). In *Olguin*, an insured sent his personal property by freight to a New York City export company because he was planning to move to New York City. The property was subsequently destroyed after it had arrived at this export company. As in the present case, the insured had a homeowner's policy with provisions virtually the same as those involved here.[2] In *Olguin*, the Wisconsin Supreme Court held that the language contained in the "Automatic Removal Permit" was not ambiguous. This clause is virtually the same as the "Change of Location" provision in the present case. The Court went on to find, however, that in order for this provision to apply, the insured had to "remove [his] personal property from his old residence to a new location already occupied or which [he had] a right to occupy as his principal residence." *Olguin, supra,*

---

1. In a deposition of Dianna Prokop, the following testimony was elicited:

> Q: And ... is it your testimony that you intended to permanently live at the Days Inn?
> A: No.
> Q: Okay you didn't intend to permanently reside at the Days Inn, did you?
> A: No.

2. Much like the "While Away from the Insured Premises" clause in the present case, the policy in *Olguin* contained an "Away from Premises" clause which provided:

> This policy also covers unscheduled personal property as described and limited, *while elsewhere than on the premises, anywhere in the world,* owned, worn or used by an Insured, ...
> The limit of Allstate's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000. (Emphasis added).

Also, the policy in *Olguin* contained a "Automatic Removal Permit," which is very similar to the "Change of Location" provision in the present case. The "Automatic Removal Permit" clause provided:

> When, during the policy period, the Named Insured *removes unscheduled personal property covered under Coverage C from the described premises to another location within the limits of that part of Continental North America* included within the United States of America, and the state of Hawaii, *occupied as his principal residence,* so much of the limit of insurance provided for Coverage C shall apply at the new location, in transit, and at the described location as the value at the new location, in transit, or at the described location, bears to the total value of such property at all locations. In no event, however, shall recovery under this extension be less than would have been available under the limit of insurance for Coverage C2 (Away From Premises). (Emphasis added).

237 N.W.2d at 697. As the insured had not done this, the Court held that this provision did not apply. Similarly, in the present case, since the Prokops had not moved to another location where they intended to permanently reside, the "Change of Location" provision does not apply in this case. Having concluded that the "Automatic Removal Permit" clause was not applicable, the Wisconsin Court went on to hold that the "Away from the Premises" provision was clearly applicable to the facts of that case. This clause is virtually the same as the "While Away from the Insured Premises" clause in the present case. We are in accord with the reasoning of the Wisconsin Supreme Court as set forth in *Olguin* as we also hold that the "While Away from the Insured Premises" is applicable under these circumstances according to the clear wording of the policy. Hence, the trial court properly limited the Prokops' recovery to 10 percent of North Star's limit of liability for personal property loss.

■ As a final matter, the Prokops submit that a judgment rendered in an amount less than the total amount of North Star's limit of liability for personal property loss is not consistent with the terms of the "Theft" provision set forth in the policy. This provision provides in pertinent part:

THEFT

...

    (b) This [policy] does not cover theft that occurs away from the insured premises of:

        1. Property while on the portion of any residential premises owned, rented or occupied by an insured, except for the period of time while an insured is temporarily residing there.

The Prokops construe this provision to mean that they were *fully* covered for theft of property that occurred while they were temporarily residing on a rented premises. We are unable to accept this construction of the "Theft" provision. This provision does not state that *full* coverage will be provided for theft under these circumstances. Rather, it merely indicates that the policy will cover theft of property while the insureds are temporarily residing

on a rented premises. Consistent with this provision, the Prokops were covered for loss under these circumstances, although only to the extent of $2750 (10 percent of the limit of liability). The "Theft" provision must not be construed in isolation. Rather, it must be construed together with all other provisions of the policy so as to give effect to each provision. *See, Sunshine Mutual Ins. Co. v. Addy*, 74 S.D. 387, 390, 53 N.W.2d 539, 540 (1952); *Helmbolt, supra.* Construing the "Theft" provision together with the "While Away from the Insured Premises" provision, it is clear that under these circumstances the Prokops are only entitled to collect 10 percent of North Star's limit of liability for personal property loss.

Judgment affirmed.

MORGAN, HENDERSON and MILLER, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I cannot agree with the majority's conclusion that "Prokops did not move to another location where they intended to permanently reside." Such a conclusion is illogical. Prokops sold their house in Sioux Falls, loaded their possessions into a U–Haul trailer, and traveled to Sacramento, where Dianna had a new job. How could they more clearly indicate an intention to move permanently from Sioux Falls to Sacramento? Although they had not yet acquired permanent housing when they arrived in Sacramento, that does not mean they had not moved to "another location where [they] intend[ed] to permanently reside." In other words, a move to another location can commence before the final, precise destination is known. Therefore, the "Change of Location" provision controls this case.

The "Change of Location" provision contains a coverage limitation for property "in transit." When property is in transit it is covered against loss only for ten percent of the prescribed coverage. In general, property is "in transit" from the time it leaves its point of departure until it arrives safely

at its destination. *See Stein–McMurray Ins., Inc. v. Highlands Ins. Co.,* 95 Idaho 818, 520 P.2d 865 (1974). As explained by the Supreme Court of New Hampshire:

> Property is considered in transit when it is moving from one location to another. This does not exclude temporary stops, incidental delays, or some deviation from the planned route of travel. However when the property to be transported has reached its destination it is generally no longer considered in transit.

*Lariviere v. New Hampshire Fire Ins. Co.,* 105 N.H. 73, 75, 193 A.2d 13, 15 (1963) (citation omitted); *accord Boonton Handbag Co., Inc. v. Home Ins. Co.,* 125 N.J.Super. 287, 310 A.2d 510 (App.Div.1973). The Days Inn was not the destination of Prokops' property. Prokops concede they did not intend to permanently reside at the Days Inn. It was simply a temporary stop until they could acquire permanent housing. Since the property had not yet reached its final destination when it was stolen, it was still in transit. Consequently, the ten percent "in transit" limitation is applicable. The exposure of the property to theft or damage substantially increased as a result of this temporary stop and justified the policy's "in transit" limitation.